Gene C. CROSBY as Administrator of the Estate of Ray Crosby, Deceased, Appellant,

v.

PAUL HARDEMAN, INC., a Michigan Corporation; Paul Hardeman, Inc., a Delaware Corporation; Arkansas Power & Light Company, Appellee,

The Aetna Casualty and Surety Company; and Jelco, Incorporated, Appellees.

No. 19440.

United States Court of Appeals Eighth Circuit.

July 28, 1969.

1

John Harris Jones, Pine Bluff, Ark., for appellant.

Donald T. Jack, Jr., of House, Holmes & Jewell, Little Rock, Ark., for appellees.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

Floyd R. GIBSON, Circuit Judge.

This is an appeal from a summary judgment entered by Chief Judge Oren Harris, United States District Judge for the Eastern District of Arkansas, against the appellant Gene Crosby, Administrator of the estate of Ray Crosby, in a suit seeking compensation for the use or rental of certain heavy construction equipment.

Originally, Ray Crosby filed this complaint against Paul Hardeman, Inc., Aetna Casualty Insurance Company, Arkansas Power & Light Company, and Jelco, Incorporated, in the Arkansas state court. Crosby and Arkansas Power & Light (hereafter referred to as APL) were Arkansas citizens but all the other defendants were citizens of states other than Arkansas. The diverse defendants removed the suit to the federal district court. Crosby questioned the validity of the removal as there was a lack of complete diversity and he contended that there was no separate and independent claim or cause of action asserted against any of the diverse defendants so as to satisfy the requirements for removal when complete diversity is lacking under 28 U.S.C. § 1441(c) (1948). The motion to remand was denied.

After Ray Crosby's death Gene Crosby, as administrator of Ray Crosby's estate, was substituted as plaintiff. The plaintiff's claims against Paul Hardeman, Inc. and its surety Aetna were settled and a judgment of dismissal was accordingly entered against those defendants. Thereafter the motion of APL and Jelco for summary judgment was granted.

Two issues are raised on this appeal: (1) the validity of the District Court's action in overruling the motion to remand to the state court; and (2) the validity of the summary judgment.

We will first consider the remand issue. Plaintiff contends the removal of the case from the state court was improvidently granted as there was no diversity jurisdiction against APL and there was only one cause of action stated arising

out of the interlocked series of transactions alleged in the complaint.

The right of removal is statutory and the party seeking removal must show that he comes within the provisions of the statute. Edwards v. E. I. Du Pont De Nemours & Co., 183 F.2d 165 (5 Cir. 1950). The allegations of the complaint as set forth at the time the petition for removal was filed are controlling. Pullman Co. v. Jenkins, 305 U.S. 534, 537–538, 59 S.Ct. 347, 83 L.Ed. 334 (1939).

The complaint as originally filed alleged a general contract between Hardeman and APL for the construction of approximately 141 miles of transmission line, with Aetna Casualty Insurance Company as surety for Hardeman, the execution of a performance bond by Hardeman and Aetna, and a sub-contract of Hardeman with the plaintiff for use of a piece of heavy equipment, called a dragline, at a rental of $590 per week which Hardeman agreed to pay until the dragline was returned to plaintiff's equipment yard at DeWitt, Arkansas, and asserted that the dragline was furnished August 22, 1964 and remained in the possession of defendants until July 22, 1965. Plaintiff claimed $28,025 for 47½ weeks' rental. In addition, plaintiff claimed $7,315.17 for other labor and equipment furnished to Hardeman under dates of September 10 and October 1, 1964, and some further sums for transportation and repair of the vehicle, bringing the total recovery sought to $39,022.-17.

APL terminated its contract with Hardeman on or about November 28, 1964, apparently because of unsatisfactory progress under the general contract, and APL proceeded to make arrangements with defendant Jelco, Incorporated, to complete the construction of the transmission line. The plaintiff had received no payment at all for his equipment and services and he contacted APL in early December 1964 concerning his problem. He was notified by letter of December 15, 1964 that APL was making arrangements with Jelco to take over and complete the construction work undertaken by Hardeman and that Jelco was in the process of making a survey of the equipment on the job to determine which equipment it desired to retain and use. The letter also stated that after the survey Jelco would get in touch with plaintiff if it desired to retain and use the equipment and, if Jelco determined to use the owner's equipment, Jelco would be responsible for future rental payments. The letter indicated a probability that Jelco would desire to retain and use plaintiff's equipment but stated, "Until Jelco advises you that it desires to use your equipment and you have made arrangements with them for the lease rental, all rental and other charges will be obligations of Paul Hardeman, Inc." The letter assured the plaintiff that APL would "do everything within its power both to collect what is already due you and to persuade Jelco to continue with the rental of your equipment." Jelco, however, never contacted plaintiff, and both APL and Jelco ignored monthly billings sent by plaintiff.

Plaintiff did not pick up the dragline until July 22, 1965 when Aetna wrote to plaintiff that the dragline might be removed from its location on the construction job. Thus, in addition to seeking the sum of $39,022.37 from Hardeman and Aetna, the complaint charged APL and Jelco with liability for $18,880 of the total sought (for rental during the period from December 15, 1964 to July 22, 1965) in the event full recovery was not obtained from Hardeman and Aetna.

Since the diversity jurisdiction of the federal district courts is statutory and there is obviously a lack of complete diversity, this case would be removable only if a separate cause of action is stated against one or more of the diverse defendants so as to make removal to the federal courts appropriate under 28 U.S. C. § 1441(c) (1948), which reads:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-

removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

Present § 1441(c) is part of the 1948 amendments to the Judicial Code. This section, according to the Reviser's Note, by permitting removal only of a "separate and independent claim or cause of action", against a diverse defendant made a distinct change from the prior law that permitted a "separable controversy" to be removed. The amendment was intended to decrease the volume of federal litigation. The leading case interpreting this section, American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951) fully substantiated the Reviser's observations.

In *Finn*, a Texas resident sought recovery for a fire loss againt two foreign insurance companies and the resident agent of the companies. A single wrong was alleged which was failure to compensate for the fire loss and there was some uncertainty as to who was liable for the loss. The Court in discussing the matter said at p. 12 of 341 U.S., at p. 539 of 71 S.Ct.:

"The effectiveness of the restrictive policy of Congress against removal depends upon the meaning ascribed to 'separate and independent  *  *  * cause of action.' § 1441. Although 'controversy' and 'cause of action' are treated as synonymous by the courts in situations where the present considerations are absent, here it is obvious different concepts are involved. We are not unmindful that the phrase 'cause of action' has many meanings.

To accomplish its purpose of limiting and simplifying removal, Congress used the phrase 'cause of action' in an accepted meaning to obtain that result."

In interpreting the meaning of "cause of action" the Court quoted from Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 71 L.Ed. 1069 (1927) which defined a "cause of action" as embracing "one actionable wrong [with] but one recovery" and as "a single wrongful invasion of a single primary right." The focus was on the concept of a violation of a single right as constituting a single cause of action. The Court in *Finn* concluded at p. 14 of 341 U.S., at p. 540 of 71 S.Ct.:

" *  *  *  [W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." [1]

Plaintiff views the single wrong as the retention of his equipment without payment of rental for which he seeks a total sum from Hardeman and Aetna. He adds some other claims not asserted against the remaining defendants, and also seeks to impress or to obligate the remaining defendants, APL and Jelco, with at least a secondary liability for a portion of the alleged rental period, in the amount of $18,880. If plaintiff actually has suffered but a single wrong for which a single recovery is sought the case would not be removable. Gray v. New Mexico Military Institute, 249 F.2d 28 (10 Cir. 1957). Chief Judge Harris analyzed the factual situation as a claim asserted against Hardeman and its surety on the basis of

1. The concept presently expressed in § 1441(c) restricting removal has occasioned considerable difficulty in its application. The American Law Institute study on Jurisdiction of Federal Courts, a summary of which is published in 46 F.R.D. 141, under the title Jurisdiction of Federal Courts—A Summary of American Law Institute Proposals, by Professor Richard H. Field, proposes abandonment of this concept for a more liberal and definitive rule. *Proposed § 1304 of the A.L.I.*

would, according to Professor Field change the law to provide:
"In multi-party actions a defendant has the same right to remove that he would have if sued alone by any party making claim against him; he may remove the entire action and not merely the claim against himself. (*Thus a plaintiff cannot prevent removal by joining a local citizen as a party defendant.*)" (emphasis supplied)

a written agreement evidenced by an invoice stating the terms of the rental to be $590 per week until the dragline is returned to the plaintiff, so that legally Hardeman and Aetna at least would be responsible for the rental from August 22, 1964, and as a claim upon an implied contract or *quasi* contract for the use of the equipment after December 15, 1964 against APL and Jelco. Chief Judge Harris held: "If Hardeman and the Aetna Company are liable for the entire sum due, if any, to the plaintiff it would obviously be several to any allegations of damages from either of the other defendants." He also said that Climax Chemical Co. v. C. F. Braun & Co., 370 F.2d 616 (10 Cir. 1966), cert. denied 386 U.S. 981, 87 S.Ct. 1287, 18 L.Ed.2d 231 appeared to control the issue in this case.

In *Climax Chemical* the action was against a contractor for the negligent performance of a contract for designing, engineering and purchasing equipment for plaintiff's plant and against other defendants who separately subcontracted to design, engineer and construct various components of the plant. The complaint alleged that all of the defendants were jointly and severally liable with the other defendants or some of them. A motion to remand for lack of complete diversity was overruled. On appeal the Court viewed the liability of the defendants other than the general contractor as separate, distinct, and unrelated, holding there was more than one primary right and that more than one single wrong was alleged. The Court further did not view the holding in *Finn* as sounding the death knell of removal jurisdiction in multi-party cases under § 1441(c), as 1 Barron & Holtzoff, Federal Practice & Procedure, § 105, p. 495 (1960 ed.) suggested it did. There it was said, "It is difficult to see how there can ever be a diversity case properly removed under this statute in the light of the construction placed on it in the *Finn* case." Rather, it was said in *Climax Chemical*, "We take *Finn* to mean that there must be substantive separability, and no more." at p. 619 of 370 F.2d.

Reverting to the case at bar, we think plaintiff's complaint alleges a separate and independent cause of action against Hardeman and its surety Aetna on the basis of a written contract for the rental of the dragline for the period August 22, 1964 to December 1, 1964, and in addition alleges a cause of action against them for other labor and equipment set forth in purchase orders dated September 10, 1964 and October 1, 1964, amounting to $7,315.17. This cause of action is clearly unrelated to any potential claim against the local defendant APL and, of course, without APL in the case, the cause would clearly be removable because of complete diversity. None of the claims asserted against Hardeman and its surety up to December 1, 1964 were or could be asserted against the other defendants. Recovery against the remaining defendant APL and its asserted agent Jelco was based upon a theory of the adoption of an existing contract, or upon a theory of an implied in fact contract for the use of the equipment for the period December 15, 1964 until the equipment was picked up July 22, 1965, or upon a theory of contract by estoppel. The cause of action against APL and Jelco not only rested upon a different legal theory, which would not necessarily be controlling, but related to a different type of claim for a different period of time from that alleged against Hardeman and Aetna. It does not appear proper that plaintiff should be allowed to defeat diversity jurisdiction as to Hardeman and Aetna by joining the local defendant APL as an alleged user of the dragline for a period after Hardeman had ceased active operations on the job. The written rental basis asserted against Hardeman and Aetna was $590 per week. Claims were made at least monthly for this amount against Hardeman before any conversation was had at all with APL, and no contact at any time was made with Jelco.

Therefore, we think the cause of action alleged against APL on grounds of an adoption of a contract, contract implied in fact or contract by estoppel is different not only in theory, but in point of time,

from the cause of action asserted against Hardeman and Aetna and is predicated upon separate injuries from the injuries previously suffered from Hardeman's failure to pay for the use of the equipment and for the additional labor and equipment unassociated with the dragline. Greenshields v. Warren Petroleum Corp., 248 F.2d 61 (10 Cir. 1957), cert. denied 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed. 2d 262. The trial court was, therefore, correct in viewing the complaint as presenting separate causes of action against Hardeman and Aetna which entitled them to removal of the case to the federal court.

Plaintiff says the summary judgment entered against him was improper as there were unresolved facts which under the application of accepted legal principles would entitle him to a trial on the merits. The basis of plaintiff's complaint is not entirely clear but is conceived by us in his appellate brief as advancing three theories for recovery.[2]

■ 1. The action of APL in asking Hardeman for a list of all equipment provided by it for work under the general contract and the subsequent acts of APL and Jelco relating to the leased equipment were consistent only with an adoption of the lease contract. APL and Jelco could be liable, of course, if Hardeman had assigned his rights and obligations under the lease contract to APL. This admittedly was not done as APL was explicit in its letter to the plaintiff Crosby under date of December 15, 1964, which informed Crosby that Jelco was surveying its equipment needs and that "until Jelco advises you that it desires to use your equipment and you have made arrangements for the lease rental, all rental and other charges will be obligations of Paul Hardeman, Inc." When Crosby talked to Mr. Pond, an agent of APL, he was told to leave the machine right there as "Somebody is responsible for it, and this line is going through and I don't

want it moved." But Pond did not agree to use the machine or pay for the machine. The most that can be said for this conversation, which was solicited by Crosby in an attempt to find out from whom he could secure payment for the past usage of his dragline and for additional information as to who might be interested in contracting for its future use, is that Pond indicated they would probably have to use the machine but he did not promise to use it. APL at that time was in the process of securing someone to take over from Hardeman and in receiving the list of equipment used by Hardeman found out that Hardeman had not even listed the equipment belonging to Crosby—thus indicating that it was not then being used on the job.[3] Thus, there could have been no actual assumption, adoption or assignment of the lease on the dragline.

■ 2. The billing of APL for rental on the machine under date of December 11, 1964 at $590 per week, setting forth a short statement of his original agreement with Hardeman, established an express or implied contract. APL, however, promptly responded to this billing by letter, informing Crosby that Jelco was making a survey of its equipment needs and if Jelco decided to use Crosby's equipment Jelco would be responsible for any future rental payments. The letter included the unambiguous caveat that until Jelco advised Crosby it desired to use his equipment and arrangements had been made with Jelco for the lease of the equipment any rental and other charges were the obligation of Hardeman. Crosby's equipment was not included in the list of equipment being used on the project as requested of and sent by Hardeman to APL. Jelco proceeded to take over the equipment as listed and did not use Crosby's dragline. APL's behavior made clear that it was not then accepting a contract for the use of the dragline.

2. We are not here concerned about the liability against Hardeman and Aetna as that issue has been settled.

3. The trial court letter opinion on the summary judgment noted that Hardeman contended it had concluded its use of the dragline and had so notified plaintiff.

3. Even if APL did not actually adopt Hardeman's obligations under the contract, its behavior led Crosby to believe an adoption had taken place and now APL is estopped to deny it. For the same reasons as discussed above we think APL's behavior was eminently clear and could not have led Crosby to believe an adoption or assignment had been effected.

The facts in this case are not in dispute and there only remains the legal interpretation to be placed upon the factual situation presented in the motion for summary judgment. These facts show no actual assignment to APL or adoption of Hardeman's rights under the contract and in fact show the contrary. There certainly was no implied offer to use the dragline as APL was not the contractor and would not be in a position to contract for the equipment, that phase of the operation being placed with the general contractor, Jelco.

■ An implied in fact contract may be inferred from the facts and circumstances of a given case, but an indispensable element of any contract, express or implied, is a promise. Here there was no promise to pay or to use the plaintiff's equipment. There was certainly no written promise, nor an oral promise, nor was the conduct of APL such as to justify Crosby in understanding that APL intended a promise so as to come under the exceptions stated in Restatement, Contracts § 5 and § 72 (1932).[4]

Crosby could properly be viewed as offering his dragline for use to APL but there was no express acceptance of this offer, nor any use of or dominion over the property exercised by APL so as to constitute an implied acceptance. A promise is an indispensable element of a contract, express or implied in fact. Restatement § 5 supra. See Downtowner Corp. v. Commonwealth Securities Corp., 243 Ark. 122, 419 S.W.2d 126 (1967).

■ In 1 Williston, Contracts § 3 (3d ed. 1957) contracts implied in fact are treated as true contracts arising from mutual agreements and intents to promise where the agreement and promise have not been expressed in words and it is noted at page 11, "The elements requisite for an informal contract, however, are identical whether they are expressly stated or implied in fact." The difference between an expressed contract containing an actual promise and an implied contract where the contract is implied from the conduct of the parties is merely in the mode of manifesting assent and in the mode of proof. Both express and implied contracts are founded upon mutual assent of the parties and require a meeting of the minds. 17 C.J.S. Contracts § 3 at pp. 553–554 (1963). There was certainly no meeting of the minds of Crosby and APL on the use of Crosby's dragline.

The contention that although there was no actual assignment APL's behavior led Crosby to believe there had been one and thus APL and Jelco are estopped to deny such assignment is also without any factual support as APL was plain in its letters and conversations with Crosby as well as its refusal to make rental payments, that APL had neither rights nor obligations in regard to Crosby's drag-

---

4. "§ 5. How a Promise May Be Made.
  "Except as stated in § 72(2), a promise in a contract must be stated in such words either oral or written, or must be inferred wholly. or partly from such conduct, as justifies the promisee in understanding that the promisor intended to make a promise."
  Nor has there been any use of the dragline so as to come within the provisions of § 72(2), Restatement, Contracts.
  § 72. Acceptance By Silence Or Exercise Of Dominion.

\*　\*　\*　\*　\*
  "(2) Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offerer may at his option treat it as an acceptance, though the offeree manifests an intention not to accept."

line. There was no *quasi* contract. Restatement, Contracts, § 5 (1932).

In this case summary judgment was not merely proper, but appears to have been required. Rule 56(c), Fed.R.Civ.P. states, " * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here there are no disputed questions of fact. The Court was merely required to draw a legal conclusion as to the existence of a contract or estoppel from the facts presented to it. There is no question of fact here as to the intention of the parties, as in LewRON Television, Inc. v. D. H. Overmyer Leasing Co., Inc., 401 F.2d 689 (4 Cir. 1968), cert. denied 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776, since no ambiguity exists as to the existence of a contract. Neither the basic elements of any contract, express or implied in fact, nor any *quasi* contract have been established by plaintiff.

The judgment of the District Court is affirmed.

