Dennis J. **GALLAGHER** et al.,
Plaintiffs-Appellants,

v.

The **CONTINENTAL INSURANCE COMPANY**, a New York corporation, et al.,
Defendants-Appellees.

No. 73-1885.

United States Court of Appeals,
Tenth Circuit.

Aug. 20, 1974.

Rehearing Denied Sept. 10, 1974.

[redacted] 

[redacted]

John S. Carroll, Denver, Colo., for plaintiffs-appellants.

Charles E. Carlsen, Minneapolis, Minn. (Weller, Friedrich, Hickisch & Hazlitt, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., Carlsen, Greiner & Law, Minneapolis, Minn., John S. Moore, Atty. Gen., Joseph M. Montano, Chief Highway Counsel, Sp. Asst. Atty. Gen., and Richard W. Phillips, Asst. Chief Highway Counsel, Sp. Asst. Atty. Gen., on the brief), for defendants-appellees.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Plaintiffs-appellants, as citizens and taxpayers of Colorado and the United States, brought this class action in state court to recover 55 million dollars for "the treasury of the State of Colorado and the treasury of the United States, as their interests may appear." The controversy centers around a highway tunnel which is part of the National System of Interstate and Defense Highways. The defendants-appellees are the project contractors, their sureties, the State of Colorado, and various Colorado officials. All defendants moved under 28 U.S.C. § 1441(c) for removal to federal court and asserted federal jurisdiction under 28 U.S.C. §§ 1331 and 1332, federal question and diversity. The district court denied a motion to remand and dismissed the action on the ground, among others, of lack of standing to sue. We affirm.

In 1967 defendant State of Colorado, acting through defendant state officials, Love, Shumate, Dunham, and Middle-

mist, contracted with defendants Al Johnson Construction Company, Gibbons & Reed Company, Western Paving Construction Company, and Kemper Construction Company, doing business as Straight Creek Tunnel Constructors, for a tunnel on Interstate 70 near Loveland Pass, Colorado. The tunnel was then known as the Straight Creek Tunnel and now as the Eisenhower Memorial Tunnel. The contract price was $54,140,486 of which the United States was to pay about 91% because the tunnel is part of a federal-aid highway within the purview of the Federal-Aid Highway Act. See 23 U.S.C. § 101 et seq.

Defendants Continental Insurance Company, Travelers Indemnity Company, Federal Insurance Company, and United States Fidelity and Guaranty Company are the sureties on the bond guaranteeing performance of the 1967 contract. The penal sum of the bond is $49,576,500, and is apportioned among the sureties in sums ranging from about $24,700,000 to about $4,900,000.

In 1970 the state and the contractors made a new contract which authorized additional payment to the contractors in the amount of some 55 million dollars. Both the 1967 and the 1970 contracts were approved by the appropriate federal official. In 1971 plaintiffs made a demand on the state officials that they refuse to pay the additional compensation called for by the 1970 contract and that they sue on the performance bond. The demand was refused. The tunnel was completed and is now in use.

■ The suit was filed in state court in 1973 and removed to federal court on the petition of all defendants. The remand motion asserts lack of federal jurisdiction and argues first that presence of the state as a defendant bars federal jurisdiction. Plaintiffs are all Colorado citizens. Because of this fact the Eleventh Amendment, which bars federal jurisdiction over a suit against a state by citizens of another state, is not literally applicable. However, the Supreme Court has held that an unconsenting

state "is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Employees v. Missouri Public Health Dept., 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed.2d 251; see also Briggs v. Sagers, 10 Cir., 424 F.2d 130, 131–132, cert. denied 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59.

■ Whether immunity is a constitutional or common law bar, the Court has held that the bar may be waived by consent to suit. See Employees v. Missouri Public Health Dept., 411 U.S. 279, 280, 93 S.Ct. 1614, 36 L.Ed.2d 251; Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed. 2d 804; Missouri v. Fiske, 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145; and Hans v. Louisiana, 134 U.S. 1, 20, 10 S.Ct. 504, 33 L.Ed. 842. In the instant case the state made a general appearance, joined in the removal petition and the resistance to plaintiffs' remand motion, moved to dismiss for failure to state a claim, and on this appeal reasserts its contentions made in the district court. It appears by its attorney general whose authority to take the mentioned actions is not questioned.

Plaintiffs are not helped by Art. III, § 2, of the Constitution which defines the extent of federal jurisdiction but contains no bar to the exercise of that jurisdiction. Waiver of immunity is not conferment of jurisdiction by consent. Be that as it may, in the case before us federal jurisdiction is asserted on grounds having nothing to do with presence of the state as a defendant.

■ An anomalous situation results if federal jurisdiction is denied because a state is joined in a suit brought for its benefit. The argument that the state is an indispensable party because it made the 1967 and 1970 contracts proves nothing. We are concerned with jurisdiction, not joinder. If jurisdiction lies in federal courts, it is not defeated by the transparent device of making the state a party defendant.

Plaintiffs also contend that neither diversity nor federal question jurisdiction can be sustained because the $10,000 requirement of §§ 1331(a) and 1332(a) can be satisfied only by the impermissible aggregation of claims. Although the total sum sought is 55 million dollars, the interest of each plaintiff and of each member of the class whether considered as state or federal citizens and taxpayers is concededly less than $10,000. Separate and distinct claims may not be aggregated to satisfy the jurisdictional requirement. Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319. The rule is different when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." Ibid.

Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511, is not to the contrary. It deals with a Rule 23(b)(3) spurious class action and asserts the continuing validity of Snyder. Ibid. at 301, 94 S.Ct. 505. We are concerned with a Rule 23(b)(1) true class action wherein the rights of class members are common and undivided. See Advisory Committee's Note to Rule 23, 39 F.R.D. 73, 100. The complaint before us seeks to enforce a single right in which plaintiffs have a common and undivided interest. Hence, aggregation is proper. Snyder, 394 U.S. at 335, 89 S.Ct. 1053. See also Berman v. Narragansett Racing Association, 1 Cir., 414 F.2d 311, 315, cert. denied 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681.

Diversity of citizenship exists between the plaintiffs and all of the sureties. Federal jurisdiction lies under § 1332 and removal is proper under § 1441(c) if a separate and independent claim is asserted against the sureties. In American Fire & Cas. Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, a single plaintiff sued two foreign insurance companies and their mutual resident agent for a fire loss. Plaintiff sought one recovery and alleged her inability to say which defendant was liable. One of the nonresident insurors removed. The Court said that the action was not removable because there was but a "single wrong" to plaintiff "arising from an interlocked series of transactions." Ibid. at 14, 71 S.Ct. at 540.

The Tenth Circuit has denied removal in cases involving single injuries for which a single relief is sought. See Gray v. New Mexico Military Institute, 10 Cir., 249 F.2d 28; Snow v. Powell, 10 Cir., 189 F.2d 172; and Willoughby v. Sinclair Oil & Gas Co., 10 Cir., 188 F.2d 902. Removal was upheld in Greenshields v. Warren Petroleum Corporation, 10 Cir., 248 F.2d 61, cert. denied 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262, a civil conspiracy case in which the complaint charged a removing party with different acts occasioning different results than those pertaining to other defendants.

Climax Chemical Company v. C. F. Braun & Co., 10 Cir., 370 F.2d 616, cert. denied 386 U.S. 981, 87 S.Ct. 1287, 18 L.Ed.2d 231, was an action against one defendant for negligently performing a contract to design and engineer an industrial plant and to guarantee the overall operation. Other defendants were charged with negligence in the design and engineering of certain components of the plant. The court distinguished the cases involving one wrong and either joint or alternative liability, 370 F.2d at 619, said that the relationship of the claims to the same plant was not enough, Ibid., and upheld removability. The Eighth Circuit followed Climax in Crosby v. Paul Hardeman, Inc., 8 Cir., 414 F.2d 1, 4–5.

In the instant complaint two recoveries are sought, one against the sureties on the performance bond made in connection with the 1967 contract and one against the contractors for money paid under the allegedly invalid 1970 contract. Plaintiffs say that there is but one wrong, the breach of the 1967 contract, and that the claims asserted

are all derived from that wrong. The difficulty is that the complaint alleges two wrongs, (1) nonperformance of the 1967 contract, and (2) payment to the contractors under the invalid 1970 contract. The difference is pointed up in the prayer for relief which seeks 49 million dollars from the sureties· under their bond and 55 million from the contractors, to the extent not paid by the sureties. Thus, the complaint asks two different recoveries. The sureties have no connection with, or concern over, the payments under the 1970 contract. The possibility of alternative relief for breach of the 1967 contract does not bar removal because of the claim based on wrongful payments under the 1970 contract. No doctrine of original sin suffices to unify the two different wrongs or the two different recoveries sought. The case differs from Finn in that, instead of a single incident giving rise to a single recovery, it presents two incidents giving rise to two possible recoveries. As said in Climax, 370 F.2d at 619, "[w]e take *Finn* to mean that there must be substantive separability, and no more." That situation obtains here. The claim against the sureties would be removable if sued on alone because the requisite diversity exists between the sureties and the plaintiffs. Our conclusion that jurisdiction lies under § 1332 makes it unnecessary to consider whether jurisdiction also lies under § 1331. The motion to remand was properly denied. Removal of the entire case is discretionary with the district court, § 1441(c), and no claim is made that the discretion was abused.

After denying the remand motion, the trial court proceeded to the motions to dismiss filed by all defendants. The court notified all parties that the motions would be treated as motions for summary judgment and afforded all parties time for the filing of affidavits and memoranda of law. Summary judgment was granted in favor of all defendants and the action was dismissed.

The initial problem is the standing of the plaintiffs to maintain the action. They sue as citizens and taxpayers of Colorado and the United States. The amended complaint omits reference to federal status and plaintiffs do not now claim any benefit from that status.

Indeed they could not do so. See United States v. Richardson, 418 U.S. 166, 179, 94 S.Ct. 2940, 41 L.Ed.2d 678; Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706; O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674; and Nat. Res. Def. Coun., Inc. v. United States Env. P. Agcy., 10 Cir., 481 F.2d 116, 121.

■ Plaintiffs urge that as state citizens and taxpayers they may sue for the recovery of unlawfully disbursed funds. Viewed in this light, the suit is a derivative action to assert state rights. Authority to bring a suit of that nature depends on state law. Colorado has no constitutional or statutory authorization for maintenance of derivative actions on behalf of the state. It has been held that absent statutory authorization citizens and taxpayers may not bring a derivative suit on behalf of the state. See e. g. Elliott v. Superior Court, 180 Cal. App.2d 894, 5 Cal.Rptr. 116, 118. In some cases courts have implied such a right. See e. g. Richardson v. Blackburn, 41 Del.Ch. 54, 187 A.2d 823, 824. In Colorado, the right would have to be implied. We agree with the district court that it is not "the province of the federal judiciary to fashion implied state rights of action."

Plaintiffs rely on Leckenby v. Post Printing & Publishing Co., 65 Colo. 443, 176 P. 490. That case does not concern a derivative action and is pertinent only to the plaintiffs' contention that they may sue to challenge official action. In Leckenby a taxpayer sued to enjoin state officials from paying money under an unconstitutional appropriation. The court said that a taxpayer may sue to restrain the misapplication of public

funds or to enjoin the payment of an appropriation made in violation of the state constitution.

The only reference to the Colorado constitution in the complaint is to Art. V, § 28, which provides that no bill shall be passed giving extra compensation to a contractor after services are rendered or contract made. This provision has no pertinence because there is no claim that any such bill has been passed. The plaintiffs refer to no Colorado statute which has been violated. The complaint alleges neither breach of duty, fraud, bad faith, nor abuse of discretion. Colorado decisions upholding taxpayers' suits against officials when one or more of such allegations are made have no pertinence.

■ The only attack on the 1970 contract is that it was entered into "without consideration." The argument presented is that "the contractors were under a preexisting duty to perform." The contract recites consideration which is adequate on its face. Failure of consideration is an affirmative defense. Rule 8(c), F.R.Civ.P. No claim is made that the execution of the 1970 contract violated any Colorado statute. The assertion of an affirmative defense is an option of the state, not of a group of taxpayers. We find nothing in the record which shows that the Colorado officials breached any legal duty or abused any discretion in rejecting the demand that they refuse to pay "extra compensation" to the contractors.

■ A demand was made on the state attorney general that he sue the contractors and sureties for damages resulting from breach of the 1967 contract. He refused. That refusal does not by itself create a cause of action in plaintiffs. Plaintiffs are doing no more

■ than attempting to assert their private views under a claim of public interest. See Nat. Res. Def. Coun., Inc. v. United States Env. P. Agcy., 10 Cir., 481 F.2d 116, 120–121. Because the attorney general is not a defendant the action may not be taken as one in mandamus to compel suit. Even if it were, the effort would fail because there is no allegation of fraud, bad faith, illegal action, improper motivation, or abuse of discretion. See McNichols v. City and County of Denver, 130 Colo. 202, 274 P.2d 317, 321.

■ Finally, plaintiffs argue that they have standing to sue because they are third-party beneficiaries of the 1967 contract. We have held that the right of a third-party to sue on a contract made for his benefit requires that the right be apparent from the express provisions of the contract and that the benefit cannot be incidental "but must be a direct benefit intended by the contracting parties to accrue in favor of the third party." Jett v. Phillips & Associates, 10 Cir., 439 F.2d 987, 991. The contract does not name plaintiffs, or any member of the general public, as promisees. The contract is with the State of Colorado, not with the people of the state as individuals. Plaintiffs are not pressing individual claims and have, at the most, an incidental interest. Recognition of the third-party beneficiary theory would open the doors to attack on every highway construction contract by any disgruntled taxpayer.

We conclude that the action was properly dismissed because the plaintiffs have no standing to sue. In the circumstances, we need not be concerned with the other grounds urged in support of the motions to dismiss.

Affirmed.