**William R. BURNS, on behalf of himself and as representative of the class herein defined, Appellant,**

**v.**

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Appellee.**

**No. 86–1608.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 8, 1986.

Decided May 27, 1987.

Doyle D. Sanders, Des Moines, Iowa, for appellant.

Vaughn C. Williams, New York City, for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and CONMY,[*] District Judge.

BOWMAN, Circuit Judge.

William R. Burns seeks to overturn the order of the District Court[1] granting defendant's motion to dismiss for lack of subject matter jurisdiction, 653 F.Supp. 77. Burns attempted to establish diversity jurisdiction under 28 U.S.C. § 1332. The District Court held that Burns had failed to allege an amount in controversy in excess of $10,000 as required by § 1332, and denied Burns's motion for class certification after finding that the commonality requirement of Fed.R.Civ.P. 23(a)(2) had not been met.[2] Burns appeals both of these rulings. We affirm the District Court's determination that it lacked subject matter jurisdiction. We hold that Burns failed to allege the requisite amount in controversy and that his claimed losses cannot be aggregated with those of prospective class members to gain jurisdiction.

Burns, owner of a life insurance policy issued by Massachusetts Mutual Life Insurance Company (Massachusetts Mutual), brought suit for breach of contract against the company, challenging its distribution of dividends following implementation of its "UPDATE" program. UPDATE was designed to increase the amount of income which could be invested by the company at market rates, and thus to increase the competitiveness of the company by increasing the dividends it could pay to policy holders. Contracts previously issued by the company had provided fixed loan rates of between five and eight percent. Burns's policy specified that he would receive a five percent interest rate on any loan against his policy. Under the UPDATE program, Massachusetts Mutual gave policy holders the option of surrendering their contractual right to obtain loans at the low interest rates specified in their policies in exchange for higher dividend payments. Massachusetts Mutual anticipated that the additional revenues generated by both the higher interest rates on loans and by the investment at market rates of larger sums (derived because of the decreased demand for loans which the increased loan interest rates would cause) would pay for the increase in dividends to policy holders who opted to participate in the UPDATE program. Those who did not accept UPDATE still could obtain loans at the fixed rates specified in their policies, but would receive dividends smaller than those received by policy holders who did accept UPDATE.

Burns declined to join the UPDATE program. He then brought this lawsuit and sought to certify a national class of those who had not accepted the UPDATE offer (approximately 550,000 policy holders), contending that those who have not accepted UPDATE are being forced to support by their premium payments the increased dividends of those who have accepted UPDATE, or, alternatively, that the non-acceptors are being deprived of dividends that properly are due them. The complaint seeks to enjoin Massachusetts Mutual from distributing dividends in accordance with the UPDATE plan and to impress a lien

[*] The HONORABLE PATRICK A. CONMY, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

[1] The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

[2] The District Court concluded that proper resolution of the class claim would require examination of the laws of 45 states and that this did not satisfy the requirement of Fed.R.Civ.P. 23(a)(2) that there be "questions of law or fact common to the class." While we are inclined to agree with this conclusion, we need not reach this issue because of our determination that the District Court lacks subject matter jurisdiction over the case.

and a trust upon Massachusetts Mutual's surplus funds in order to protect the class. Burns contends that to accord differing treatment to policy holders based on their acceptance or non-acceptance of UPDATE is a breach of contract. The complaint alleges that the amount in controversy for each individual in the proposed class can be measured by subtracting the total amount of dividends which a class member will receive over his or her life expectancy from the average of the dividends paid to an UPDATE and a non-UPDATE policy holder in the individual's policy group during that same period.[3] Burns enhances his claimed loss by adding an eight percent per annum personal investment loss to that figure. Burns assumes his life expectancy to be fifteen years and concludes that the amount in controversy with respect to his individual claim is $19,230 if the eight percent accumulated interest is included, or $12,823 if it is not. Alternatively, Burns seeks to aggregate the individual claims of the class members in order to establish the jurisdictional amount.[4]

■ The amount in controversy in a suit for injunctive relief is measured by the value to the plaintiff of the right sought to be enforced. *Massachusetts State Pharmaceutical Association v. Federal Prescription Service, Inc.*, 431 F.2d 130, 132 (8th Cir.1970); *see Bishop Clarkson Memorial Hospital v. Reserve Life Insurance Co.*, 350 F.2d 1006, 1008 (8th Cir.1965). While a plaintiff's good faith allegation is to be taken as true unless challenged, a plaintiff who has been challenged as to the amount in controversy has the burden of showing that the diversity jurisdiction re-

quirements have been met. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Euge v. Trantina*, 422 F.2d 1070, 1074 (8th Cir.1970). And where, "from the face of the pleadings it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed ... the suit will be dismissed." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). The District Court found that Burns had failed to meet this burden of proof.

■ In making its determination, the District Court carefully considered and rejected Burns's argument that his threatened loss should be measured by aggregating his claimed per year loss for the period of his life expectancy. The court attacked this assumption on several grounds. The court first noted that Burns incorrectly stated the amount in controversy because he had assumed that the fund from which dividends come is of a finite size and that any increase in dividends paid to UPDATE acceptors is a decrease in dividends to non-acceptors. In fact, the court found, the amounts available to Massachusetts Mutual for the payment of dividends have been increased as a direct result of the UPDATE program. Moreover, the court noted that the market-determined interest rates at which Massachusetts Mutual invests its funds are determinative of the difference between the dividends paid to UPDATE and non-UPDATE policy holders, and that the illustrative figures that Massachusetts Mutual had distributed did not reflect the currently prevailing lower rates.

3. Massachusetts Mutual sent a pamphlet and accompanying literature to its policy holders in an effort to stimulate interest in the UPDATE program. The literature contained estimated dividend payments for Burns over his life expectancy with and without the UPDATE program. Burns used these estimated dividend figures to calculate his alleged loss. For a single year, Burns's equation is as follows:

$$\frac{\text{Dividends paid to an UPDATE member} + \text{Dividends paid to a non-UPDATE member}}{2} - \frac{\text{Dividends paid to non-UPDATE member}}{} = \frac{\text{Amount in controversy per year}}{}$$

Burns alleges that the sum of the amounts in controversy for each year of the non-UPDATE policy holder's life expectancy is the proper figure to be used in determining the amount in controversy.

4. Burns asserts that during his lifetime the UPDATE program will result in a shift of up to $6 billion from the class he seeks to certify.

The court also found Burns's claimed losses to be highly speculative, noting that Massachusetts Mutual had no duty under the policy to pay dividends in any year, nor to pay those dividends in the manner which Burns asserted. Burns's policy provided only that the "policy while in force will be credited with such share of the surplus funds of the Company as may be apportioned thereto by the Directors, such apportioned shares being designated herein as dividends." Thus, Burns's argument that his receipt of dividends in every year since 1959 renders the payment of dividends a certainty is mistaken; there was no contractual guarantee that any dividends would be paid over Burns's lifetime. Noting the speculative nature of the claimed future loss, the District Court held as a matter of law that "[w]here an injunction protects only a potential right as in this case, the court believes that only the present value of the possible additional dividends can be considered in determining the value of the right sought to be enforced." Order at 4 (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 642, 95 S.Ct. 1225, 1230, 43 L.Ed.2d 514 n. 10 (1975)).[5] The court found the present value of Burns's claimed loss to be, to a legal certainty, well below the $10,000 jurisdictional amount required by § 1332.

A recent decision of the Seventh Circuit supports the approach taken by the District Court. In *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075 (7th Cir. 1986), the plaintiffs brought a breach of contract action seeking to obtain certain stock, or its monetary equivalent, that had been awarded to them and that was to be issued to them over a ten year period. The defendant moved to dismiss on the ground that the plaintiffs had not alleged the minimum jurisdictional amount. Plaintiffs asserted that the amount in controversy was equal to the price of stock at the time the motion to dismiss was filed, multiplied by the total number of shares to which they laid claim. The court rejected this argument, requiring that plaintiffs demonstrate that the stock (and any attorney's fees they could claim) had a present value greater than $10,000. The court concluded that

the plaintiffs ... were [not] entitled to all the shares at once. At best, they were entitled to them in equal annual installments over 10 years.... *When what is claimed is a future benefit, the valuation of the claim for purposes of jurisdiction (as for purposes of computing the lump sum of damages to which a winning plaintiff is entitled in compensation for losing the future benefit) requires discounting the future benefit to its present value.*

*Id.* at 1078 (emphasis added); *see also Martinez v. Maher*, 485 F.Supp. 1264, 1269 (D.Conn.), *aff'd*, 631 F.2d 5 (2d Cir.1980). We are in agreement with the Seventh Circuit and the well-reasoned opinion of the District Court below. Where the heart of a cause of action is a claim for future benefits, the amount in controversy is the present value of the claimed future benefit. Here, the District Court has determined that the present value of Burns's claim is less than $10,000. That determination is not clearly erroneous. Accordingly, we agree with the District Court that Burns, individually, does not meet the amount in controversy requirement of 28 U.S.C. § 1332.

**5.** In *Weinberger,* the Supreme Court indicated that in an injunctive action where the relief sought was the right to obtain future benefits, the present value of those future benefits would determine the amount in controversy. The appellant sought to obtain social security benefits following the death of his spouse in childbirth. The Court stated:

Social security benefits are to some degree in the nature of insurance, providing present security and peace of mind from fear of future lack of earnings. Also, unlike disability benefits ... these survivors' benefits do not depend upon ability to earn, but only upon actual earnings. Thus, they give a potential recipient a choice between staying home to care for the child and working. This opportunity for choice, and *the potential right to as much as $53,640 worth of benefits ($2,980 per year times 18 years), certainly has a present value of $10,000,* whether or not the claimant was eligible for benefits on the day he filed suit.

420 U.S. at 642 n. 10, 95 S.Ct. at 1230 n. 10 (emphasis added).

Alternatively, Burns contends that the losses of the proposed class of non-UP-DATE policy holders should be aggregated to meet the jurisdictional requirement. He asserts that where equitable relief is sought by a class, the claims traditionally have been considered to be common and the amount in controversy has been determined by aggregating the claims of the class. He argues that the class he seeks to certify has a common and undivided interest in the proper division of the surplus funds. We believe otherwise.

Traditionally, " '[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.' " *Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973) (quoting *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911)). In *Snyder v. Harris*, 394 U.S. 332, 336–37, 89 S.Ct. 1053, 1056–57, 22 L.Ed.2d 319 (1969), the Supreme Court held that the rules of aggregation traditionally applied in class action suits survived the 1966 amendments to the federal class action rule, Fed.R.Civ.Proc. 23. In *Zahn*, the Court expanded this holding, ruling that in a class action suit under Rule 23(b)(3), each member of a prospective class presenting separate and distinct claims must meet the $10,000 jurisdictional requirement before being admitted to the class. 414 U.S. at 301, 94 S.Ct. at 511. Several courts have applied the ruling in *Zahn* to all federal class action suits, looking to the substance of the class action claim, rather than to the specific subheading of Rule 23(b) under which it was brought, to determine whether aggregation is permissible. *See, e.g., Amen v. City of Dearborn*, 532 F.2d 554, 559 (6th Cir.1976); *Snow v. Ford*, 561 F.2d 787, 790 (9th Cir. 1977); *see also* 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1756, at 76–86 (1986). *But see Gallagher v. Con-*

*tinental Insurance Co.*, 502 F.2d 827, 831 (10th Cir.1974).

The question before us, then, is whether this lawsuit presents a separate and distinct claim as to each member of the proposed class or seeks to enforce a single claim that is undivided and common to the class. The courts which have dealt with the issue have held that class members in class action suits seeking a monetary recovery on insurance contracts do not present common claims that can be aggregated in determining whether the jurisdictional amount is present. *See, e.g., Alvarez v. Pan American Life Insurance Co.*, 375 F.2d 992, 993 (5th Cir.), *cert. denied*, 389 U.S. 827, 88 S.Ct. 74, 19 L.Ed.2d 82 (1967); *cf. Spears v. Robinson*, 431 F.2d 1089, 1092–93 (8th Cir.1970) (dicta). In *Andrews v. Equitable Life Assurance Society*, 124 F.2d 788 (7th Cir.1941), *cert. denied*, 316 U.S. 682, 62 S.Ct. 1270, 86 L.Ed. 1755 (1942), the plaintiffs were policy holders seeking accounting and distribution of undistributed surplus funds held by the defendant life insurance companies. The plaintiffs sought to aggregate the claims of the potential class members in order to establish the requisite jurisdictional amount. The court initially noted that if the claims of the plaintiffs were joint, the size of the surplus fund would govern. However, the court held that

> where the claims, as in the case at bar, are several as against the fund, then the claims cannot be aggregated to make the jurisdictional amount.... "The rights of policyholders are not derived from the same, or a common, title. The right each has in the fund is based upon the separate, distinct contract each has with the company with respect thereto. The sole matter in dispute is between the defendant and each complainant, as to the amount the latter shall recover...."

124 F.2d at 790 (quoting *Eberhard v. Northwestern Mutual Life Insurance Co.*, 241 F. 353, 354–55 (6th Cir.1917)). These cases are instructive. Here, the point of Burns's lawsuit is to compel the payment of sums he asserts he is entitled to receive under the terms of his contract with Mas-

sachusetts Mutual. The claims of the proposed class members are distinct from each other; each policy holder asserts an individual claim based upon that policy holder's individual contract. We therefore conclude that the claims of the proposed class members are separate and distinct and cannot be aggregated for purposes of satisfying the requisite jurisdictional amount.[6]

To summarize, we hold that Burns individually has not met the jurisdictional amount requirement and that the claims of his proposed class cannot be aggregated for that purpose. Accordingly, we affirm the order of the District Court dismissing this case for lack of subject matter jurisdiction. Our holding makes it unnecessary for us to discuss the class certification issue.

AFFIRMED.

---

**6.** The First Circuit has, in at least one instance, aggregated the claims of a class seeking to recover future monetary benefits. However, we believe that case to be distinguishable on its facts. In *Berman v. Narragansett Racing Association,* 414 F.2d 311 (1st Cir.1969), the First Circuit aggregated the claims of horse owners (who were entitled by an annual purse agreement to 44.7% of the track's annual share if they were among a group of owners whose horses had won purses at the track in that year) who claimed an entitlement to a portion of the "breakage" (the odd cents remaining after payouts on bets are rounded off to the next lowest dime) which previously had not been included in the annual purse agreement. The court in *Berman* stressed the fact that an adjudication of the claims of the horse owners as a class would not create individual contract rights and would not be determinative of the final rights of the horse owners individually. *Id.* at 315. That is not the case here. Burns's purported class raises claims based on the individual contract rights of class members, and adjudication of the class claims necessarily would be determinative of those individual rights. We therefore conclude that Burns has not alleged a common and undivided interest of the type described in *Berman.*