Laura HERLIHY, F. Brett Platko, and Quinn Thomas Hurley, Plaintiffs,

v.

PLY–GEM INDUSTRIES, INC., Hoover Treated Wood Products, Inc., Georgia Pacific Corporation, Osmose Wood Preserving, Inc. Lowe's Home Centers, Inc. and Allied Plywood Corporation, Defendants.

Civ. No. H–90–1208.

United States District Court, D. Maryland.

Dec. 13, 1990.

Arnold Levin and Levin, Fishbein, Sedran & Berman, Philadelphia, Pa., and R. Thomas Radcliffe, Jr., Carolyn J. Moses and Church & Houff, P.A., Baltimore, Md., for plaintiffs.

Jeffrey R. Schmieler and Saunders & Schmieler, Silver Spring, Md. for defendant Ply–Gem Industries, Inc.

T. Michael Preston, Anderson, Coe & King, Baltimore, Md. for defendant Hoover Treated Wood Products, Inc.

**1284**

C. Thomas Brown and Semmes, Bowen & Semmes, Baltimore, Md., for defendants Georgia Pacific Corp. and Lowe's Home Centers, Inc.

Read K. McCaffrey and Whiteford, Taylor & Preston, Washington, D.C., for defendant Osmose Wood Preserving, Inc.

John B. Isbister, Lawrence J. Hooper, Jr. and Tydings & Rosenberg, Baltimore, Md., for defendant Allied Plywood Corp.

ALEXANDER HARVEY, II, Chief Judge.

Presently pending before the Court in this civil action are motions to dismiss filed by all defendants. Plaintiffs are three citizens of the State of Maryland suing individually and allegedly on behalf of a class of individuals which has not as yet been certified. Plaintiffs have here sued six corporate defendants [1] claiming that a fire retardant plywood product, installed on the roofs of plaintiffs' homes, has begun or will begin to deteriorate and cause damage to the roofs and roof support systems. Defendants allegedly manufacture and sell the product. *Inter alia,* claims of a breach of implied warranty, negligence and strict liability are asserted. Diversity jurisdiction is alleged pursuant to 28 U.S.C. § 1332(a).

All six named defendants have filed motions to dismiss the complaint. Defendants' principal contention is that plaintiffs have failed to satisfy the jurisdictional requirement that the amount in controversy for each claim must exceed $50,000, exclusive of interest and costs. Defendants further argue, *inter alia,* that plaintiffs do not have standing to sue because they have not alleged an injury-in-fact caused by the conduct of each defendant.

Memoranda, affidavits and exhibits in support of and in opposition to the pending motions have been filed. Oral argument has been heard in open court. For the reasons to be stated herein, defendants' motions to dismiss will be granted.

## I
### Facts

Fire retardant (FRT) plywood is a construction material which has been treated with chemicals and is designed to create a fire-stopping acidic reaction upon exposure to high temperatures such as those reached during a fire. Because this material fulfills building code requirements that attached buildings have a fire barrier, it has been commonly used for the construction of the roofs of various residential buildings throughout the eastern region of the United States. Plaintiffs allege that FRT plywood does not operate as designed because rooftops often reach high temperatures in warm weather, and because the chemical reaction takes place in the absence of a fire, leading to a deterioration of the plywood and roof supports upon which the plywood is placed.

Plaintiffs Laura Herlihy, F. Brett Platko, and Quinn Thomas Hurley are all residents of Gaithersburg, Maryland, and each plaintiff is the owner of a home, the roof of which has been constructed with FRT plywood. Defendants are corporations located in states other than Maryland and are each engaged in the manufacturing, testing, distributing and selling of FRT plywood products. Plaintiffs estimate that the total cost of replacing the roofs of members of the alleged class will be between $2 billion and $3 billion. If the amount in controversy for each plaintiff exceeds $50,000, diversity jurisdiction will exist since none of the defendants is incorporated in Maryland and none has a principal place of business in Maryland. *See* 28 U.S.C. § 1332(a).

## II
### The Claims

Plaintiffs have brought suit alleging that defendants have, in manufacturing and testing FRT plywood products, breached various duties owed to them. The complaint is in five counts. In Count I, plain-

---

**1.** The corporate defendants are Ply–Gem Industries, Inc., Hoover Treated Wood Products, Inc., Georgia Pacific Corporation, Osmose Wood Pre- serving, Inc., Lowe's Home Centers, Inc. and Allied Plywood Corporation.

tiffs assert a cause of action based upon a breach of implied warranties concerning the structural integrity and intended purpose of FRT plywood. Count II alleges a claim of negligence based on defendants' alleged failure to exercise reasonable care in the manufacturing, testing, distribution and sale of FRT plywood. Count III asserts that defendants are liable to plaintiffs under a theory of strict liability for the alleged manufacture and sale of an unreasonably dangerous product.

Count IV alleges that defendants are liable for the actions of each defendant because they acted pursuant to a common plan or concert of action for the benefit of the plywood industry, each giving the others substantial assistance in subjecting plaintiffs to an unreasonable risk of harm. Count V seeks equitable relief in the form of a mandatory injunction whereby the Court would compel defendants to create a monetary fund to be used to pay for remedial action consisting of the monitoring, testing, and replacement of the roofs of plaintiffs and members of the alleged class.

## III

### Applicable Principles of Law

■■■ A motion to dismiss under Rule 12(b)(6), F.R.Civ.P., may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In determining whether to dismiss a complaint, this Court must view the well-pleaded allegations in a light most favorable to the plaintiff, with the alleged facts accepted as true. 2A *Moore's Federal Practice* Para. 12.07 [2.–5] (2d ed. 1987). A complaint may be dismissed for lack of subject matter jurisdiction if it appears to a legal certainty that the plaintiff's claim is for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

The first inquiry which should be made by a federal court in a case before it is a determination as to the existence of jurisdiction. A federal court is a court of limited jurisdiction, and it is necessary that the facts of a dispute be closely examined by the court to determine whether federal jurisdiction exists. Jurisdiction has been claimed to exist in this case under 28 U.S.C. § 1332(a), and the first essential inquiry here is whether the jurisdictional requirement of $50,000 has been met. In *Healy v. Ratta*, 292 U.S. 263, 269–70, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1933), the Supreme Court, in discussing an earlier form of § 1332, said the following:

> From the beginning suit between citizens of different states, or involving federal questions, could neither by brought in the federal courts nor removed to them, unless the value of the matter in controversy was more than a specified amount. Cases involving lesser amounts have been left to be dealt with exclusively by state courts, except that judgment of the highest court of a state adjudicating a federal right may be reviewed by this Court. Pursuant to this policy the jurisdiction of federal courts of first instance has been narrowed by successive acts of Congress, which have progressively increased the jurisdictional amount. The policy of the statute calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution.

(citations omitted).

More recently, the Supreme Court reaffirmed its interpretation of Congress's intention in amending § 1332(a), stating that the Congressional purpose in increasing the amount in controversy to $10,000 was "to check to some degree, the rising case load of the federal courts, especially with regard to the federal courts diversity of citizenship jurisdiction." *Snyder v. Harris*, 394 U.S. 332, 339–340, 89 S.Ct. 1053, 1058–1059, 22 L.Ed.2d 319 (1969). Judicial interpretation of § 1332(a) has consistently interpreted the congressionally enacted phrase "matter-in-controversy" as not encompassing the aggregation of sepa-

rate and distinct claims. *Id.* at 339, 89 S.Ct. at 1058. The Court in *Snyder* further held that to allow aggregation of claims which parties happened to bring together in a single action would be to undercut the purpose of the jurisdictional amount requirement. *Id.* at 340, 89 S.Ct. at 1058. *See also, Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

In *Nelson v. Keefer,* 451 F.2d 289, 294 (3d Cir.1971), the Third Circuit concluded "that Congress intended that trial judges exercise permissible discretion prior to trial in adjudicating challenges to jurisdiction." In an Opinion written by Judge Aldersert, the Court went on to say the following (at page 295):

> Because the federal judiciary has been too timid to execute the congressional mandate in personal injury actions, we have all contributed to clogging dockets, monopolizing trial rooms, and committing the expense and energies of our system to a plethora of cases which do not belong in federal courts.

In *Gauldin v. Virginia Winn–Dixie, Inc.,* 370 F.2d 167 (4th Cir.1966), the Fourth Circuit, although not ruling on the issue, expressed the following concerns:

> Congress acted to raise the federal jurisdictional amount from $3,000 to $10,000 undoubtedly intending to relieve the federal courts of litigation of relatively minor importance. In cases where the plaintiff's actual damages are small and his injury clearly appears slight, the District Court should carefully scrutinize the special damages and the offers of proof. A vigorous, aggressive and intelligent inquiry at the pre-trial stage and the dismissal because of the lack of jurisdiction where warranted will, it is hoped, have the salutary effect of discouraging the institution of actions in the federal courts where it is clearly apparent that the plaintiff has arbitrarily and without justification alleged damages equal to or in excess of the statutory amount so that

he may invoke the jurisdiction of a federal court.

In May of 1989, the amount-in-controversy requirement of 28 U.SC. § 1332(a) was raised from $10,000 to $50,000. In so amending the statute, Congress reaffirmed its intention that federal courts are courts of limited jurisdiction available only to those plaintiffs which clearly meet jurisdictional requirements. In this case, each plaintiff has failed to show that the amount in controversy for his or her claim exceeds $50,000, exclusive of interest and costs. The complaint will accordingly be dismissed without prejudice to the right of each plaintiff to seek relief in an appropriate state court.

## IV

### Discussion

Defendants first contend that each plaintiff has failed to meet the $50,000 jurisdictional amount and that plaintiffs' claims cannot be aggregated because they do not have a common and undivided interest. This Court would agree. Second, defendants contend that plaintiffs lack standing because they have not alleged a specific injury caused by the conduct of each named defendant. There is likewise merit to this argument.[2]

### (a)

### Jurisdictional Requirements

▪ In support of their first argument, defendants have submitted the affidavit of Robert Wangel in which it is stated that the cost of repair and/or replacement of the FRT plywood located in the home of each of the plaintiffs would not exceed $50,000. Plaintiffs concede that the cost of repairing and replacing the FRT plywood in each home will not exceed the jurisdictional requirement of § 1332(a). However, they contend that the Court nevertheless has jurisdiction under the particular circumstances of this case.

---

**2.** Defendants also argue that dismissal is warranted because plaintiffs may not sue in tort for their pure economic loss and because plaintiffs cannot meet the requirements of a Rule 23 class. In view of the conclusions reached by the Court on the issues of jurisdiction and standing, it is not necessary to address these further arguments.

Specifically, plaintiffs contend that their claims may be aggregated because they have a "common and undivided interest" in the development of a fund for the testing and monitoring of the deterioration of FRT plywood and, ultimately, for the repair and replacement of damaged roofs and roof support systems. Plaintiffs assert that the costs associated with this fund may be expected to exceed $2 billion, an amount which clearly satisfies the jurisdictional requirement. In support of these contentions, plaintiffs have submitted a report of the National Research Center in which it is estimated that the costs to the industry and the public of such testing and repair could exceed $2 billion. Under such circumstances, plaintiffs argue that aggregation of their claims is warranted.

In *Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.*, 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911), the Supreme Court permitted aggregation of claims in a suit to enforce a jointly held lien. In so holding, the Court said the following:

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

222 U.S. at 40–41, 32 S.Ct. at 9. Because the lien in suit was held jointly and because neither plaintiff could enforce the lien in the absence of the other, the Court permitted aggregation of the claims in the *Troy Bank* case.

Under *Troy Bank* and related decisions, the aggregation of claims in order to satisfy the jurisdictional requirements of § 1332(a) is permitted only (1) in a case in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in a case in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest. *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). In *Snyder*, the Supreme Court held that these limitations on a plaintiff's attempt to aggregate claims are also applicable to a class action and that each plaintiff in such a suit must individually satisfy jurisdictional requirements. The Court specifically cautioned against the use of attempted aggregation of claims in class action suits to undercut the jurisdictional amount requirement. 394 U.S. at 340.

In suits for breach of contract or breach of implied warranties, it has been held that the claims asserted are separate and distinct. In *Glover v. Johns–Manville Corp.*, 662 F.2d 225 (4th Cir.1981), a number of manufacturers of asbestos brought an action seeking indemnity from the United States pursuant to various government contracts. In affirming the district court's dismissal of the claims of the manufacturers, the Fourth Circuit said the following:

> The [plaintiff] manufacturer's claims, while common in the sense that they appear to arise under similar circumstances, fail to have the undivided interest that is a necessary predicate to aggregation. Neither is there a single title or right, rather the claim of each manufacturer to indemnity is its alleged contract with the government. The interest of each manufacturer flows from its claimed independent contractual relationship with the United States. Although such claims may be subject to joinder pursuant to Rule 20 of the Federal Rules of Civil Procedure, they are deemed separate and distinct for purposes of determining the amount in controversy.

*Glover*, 662 F.2d at 231.

Similarly, in *Burns v. Massachusetts Mutual Life Insurance Co.*, 820 F.2d 246, 250 (8th Cir.1987), the plaintiff brought a class action against defendant insurance company for breach of his insurance policy. The Eighth Circuit in *Burns* affirmed the dismissal of the case for lack of subject matter jurisdiction, rejecting plaintiff's arguments that the class claims should be aggregated. The Court stated:

The rights of policy holders are not derived from the same, or a common, title. The right each has in the fund is based upon the separate, distinct contract each has with the company with respect thereto. The sole matter in dispute is between the defendant and each complainant, as to the amount the latter shall recover ...

*Burns,* 820 F.2d at 250, citing *Andrews v. Equitable Life Assurance Society,* 124 F.2d 788, 790 (7th Cir.1941), *cert. denied,* 316 U.S. 682, 62 S.Ct. 1270, 86 L.Ed. 1755 (1942). Because each policy holder had asserted an individual claim based upon that policy holder's contract, the Eighth Circuit in *Burns* did not permit aggregation.

Relying upon the case of *Berman v. Narragansett Racing Association,* 414 F.2d 311 (1st Cir.1969), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970), plaintiffs contend that aggregation of the claims is warranted in this particular case. The plaintiffs in *Berman* had instituted a class action on behalf of horse owners against the owners of a race track for their failure to pay money allegedly due under an annual purse agreement. The First Circuit reversed the District Court's dismissal of the suit for lack of subject matter jurisdiction, holding that the horse owners had a common and undivided interest in the enforcement of the purse agreement under which they received their earnings. In so holding, the Court concluded that the plaintiffs had asserted a single right although they would be entitled to an individual distribution of the monies. *Berman,* 414 F.2d at 314–15. In this case, plaintiffs contend that their interest in a fund to monitor, inspect, repair or replace the FRT plywood is similar to the interests possessed by the plaintiffs in *Berman.*

However, the facts of *Berman* are readily distinguishable from those present in the case pending in this Court. In *Berman,* "no contractual rights [were] created between the defendants and individual pursewinners"; rather, plaintiffs sought to enforce an agreement which had been entered into for the joint benefit of a group of horse owners as a whole. *Id.* at 315. No one plaintiff was a separate party to the agreement, and the interpretation and enforcement of the agreement sought by one horse owner affected the rights and profits of all others. Based on these facts, the First Circuit concluded that the plaintiffs were uniting to enforce a single right in which they had a common and undivided interest.

In contrast, each plaintiff in this case entered into a separate contract for the installation of his or her respective roof. The basis for plaintiffs' suit does not arise under any one document or agreement setting forth the rights of all. Rather, each plaintiff possesses rights under an individual contract or warranty with either the builder of the home or the manufacturer or distributor of the FRT plywood. Similarly, a defendant's tortious act or other breach of duty would result in a separate and distinct liability to each plaintiff. Each individual claim against each defendant must therefore in this case be evaluated independently. On the facts here, it cannot be said that plaintiffs have a common and undivided interest with respect to the repair and replacement of their roofs.

Plaintiffs have also referred the Court to a number of cases in which plaintiffs in a class action sought the creation of a fund for the vindication of their rights and in which aggregation of claims was accordingly permitted. A common and undivided interest has been found to exist when a class of plaintiffs seek to require defendants to establish a trust fund. *Dierks v. Thompson,* 414 F.2d 453 (1st Cir.1969). Aggregation has also been permitted in a suit brought by a class of plaintiff/taxpayers against various government contractors and their sureties to recover money for the state treasury. *Gallagher v. Continental Insurance Company,* 502 F.2d 827, 831 (10th Cir.1974).

However, the facts of those cases differ markedly from those present here. In the cases cited, the plaintiffs were not seeking a distribution to themselves of the proceeds of the fund. In this case, plaintiffs ask the Court to create a fund from which the costs of inspection, repair and replacement

will be paid. Were this Court to grant the relief sought, the result would be simply a distribution to each plaintiff of amounts recoverable by him or her for the repair or replacement of the roof in question. The purpose of the fund sought to be created here differs greatly from that of other funds in cases in which aggregation was permitted. This Court accordingly has concluded that the principles of those "fund" cases do not apply here.

▌ Plaintiffs have not in their complaint sought punitive damages. Nevertheless, they suggest in their memorandum filed in opposition to the pending motions to dismiss that there is a "potential" for an award of punitive damages and that such a "potential" creates a common and undivided interest sufficient to allow them to aggregate their claims to reach the required jurisdictional amount.

Were plaintiffs to attempt to amend their complaint to add a claim for punitive damages, such a requested amendment would be denied.[3] The Fourth Circuit has cautioned that claims for punitive damages proffered for the purpose of achieving the required jurisdictional amount should be carefully examined. *Saval v. BL Ltd.,* 710 F.2d 1027, 1033 (4th Cir.1983). Absent some showing of a change of circumstances or developing damage or injury to explain the inflation of a claim, amendment of the claim after jurisdictional inadequacy becomes apparent provides independent evidence that the claim has been inflated solely to exceed the jurisdictional threshold. *LeBlanc v. Spector,* 378 F.Supp. 301, 307–08 (D.Conn.1973); *Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1193 (D.C.Cir.1983) (Scalia, J.). Not only has there been no showing by plaintiffs in their memoranda of changed circumstances such as would support a request for punitive damages, but plaintiffs have even conceded during oral argument that they do not have suffi-

cient facts to request an award of punitive damages.

▌ Moreover, it is well established under Maryland law that punitive damages are not recoverable for a breach of contract. *Nunes v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 609 F.Supp. 1055, 1061 (D.Md.1985). In order to recover punitive damages in an action for breach of contract, a plaintiff must demonstrate that the defendant committed a tort arising from the contract. *Miller Building Supply v. Rosen,* 305 Md. 341, 348, 503 A.2d 1344 (1986). The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort. *Heckrotte v. Riddle,* 224 Md. 591, 595, 168 A.2d 879 (1961). In a case in which the recovery of punitive damages is based on a tort arising out of the contract, a plaintiff may not recover punitive damages in the absence of a showing of actual malice, defined as an unlawful act performed with evil or rancorous motive and motivated by hatred. *See Drug Fair v. Smith,* 263 Md. 341, 352, 283 A.2d 392 (1971). These principles would appear to be equally applicable to a claim of breach of warranty.

Nothing in the complaint or in counsel's arguments suggests that evidence exists which would permit plaintiffs to plead actual malice if they were permitted to amend the complaint. In the absence of such a pleading, plaintiffs may not rely on the possibility of an award of punitive damages in this case to satisfy the jurisdictional requirements of § 1332(a).

For all these reasons, this Court concludes that the complaint must be dismissed because of plaintiffs' failure to satisfy, by each individual claim, by the class claims, or by both, the jurisdictional requirement of § 1332(a) that the amount in

---

**3.** One court has held that plaintiffs in a toxic tort case had a common and undivided interest in the recovery of punitive damages and the creation of a fund to punish and deter the alleged misconduct. *Martin v. Granite City Steel Corp.,* 596 F.Supp. 293, 297 (S.D.Ill.1984). That ruling would appear to be contrary to the

principles established by the Supreme Court in *Snyder,* inasmuch as it views the jurisdictional amount from the defendant's perspective rather than from the measure of harm to or expected recovery of the plaintiff. *Indianer v. Franklin Life Insurance Co.,* 113 F.R.D. 595, 604–5 (S.D. Fla.1986).

controversy for each claim must exceed $50,000, exclusive of interest and costs.

### (b)
### *Injury in Fact*

Article III of the Constitution limits the judicial power of the United States to the resolution of "cases" and "controversies." *Valley Forge Christian College v. Americans United For Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). In keeping with this threshold requirement of an actual case or controversy, the Supreme Court has consistently required that a litigant have "standing" to challenge the action sought to be adjudicated in federal court. *Valley Forge*, 454 U.S. at 471, 102 S.Ct. at 757. In order to have standing, a plaintiff must demonstrate some actual or threatened injury as a result of the putatively illegal conduct of the named defendant, and must show that the injury can be fairly traced to the challenged action and that the injury is likely to be redressed by a favorable decision. *Id.* at 472, 102 S.Ct. at 758, citing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976). The constitutional limits on standing result in the elimination of a claim in which the plaintiff has failed to make out a case or controversy between himself and the named defendant. *Gladstone*, 441 U.S. at 99, 99 S.Ct. at 1607.

Nowhere in the complaint is there an allegation that a named plaintiff suffered any injury or damage because of the wrongful act or conduct of a named defendant. Rather than relying on any allegation in the complaint of a specific injury, plaintiffs contend that they have standing to sue under a so-called "concert of action" theory. Plaintiffs argue that a defendant may be liable for an injury caused by the product of another if the plaintiff can prove that multiple defendants acted tortiously pursuant to a common plan or design. Restatement (Second) of Torts § 876 (1979). Plaintiffs contend that they have sufficient-

ly alleged in this case a concert of action and that therefore they have standing to sue the six named defendants. There is no merit to this contention.

Under traditional products liability law, the plaintiff must prove that the defendant manufacturer made the product that caused the plaintiff's injury. *See Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480 (11th Cir.1985). In this case, plaintiffs raise a theory of liability based on non-identification of the defendants. However, Maryland law does not recognize a non-identification theory based on an alleged concert of action. In *Tidler v. Eli Lilly*, 851 F.2d 418 (D.C.Cir.1988), the Court of Appeals for the District of Columbia, in applying Maryland law, concluded that no cause of action existed in Maryland based on an alleged concert of action. The Court noted that Maryland had always adhered to the traditional view that a plaintiff must attribute the defect of a product to the seller and must further establish a causal relation between the defect and the injury. *Tidler*, 851 F.2d at 425, citing *Jensen v. American Motors Corp.*, 50 Md.App. 226, 437 A.2d 242 (1981). In *Tidler*, the Court of Appeals affirmed the District Court's ruling granting summary judgment in favor of defendants.

In *Lee v. Baxter Healthcare Corp.*, 721 F.Supp. 89 (D.Md.1989), *aff'd*. 898 F.2d 146 (4th Cir.1990), this Court recently held that Maryland law does not recognize a cause of action based upon an alleged concert of action. The plaintiff in *Lee*, although unable to identify the manufacturer of a defective breast implant, brought suit against various manufacturers on the basis of an alleged concert of action. Judge Ramsey of this Court granted defendants' motion for summary judgment, concluding that Maryland courts "apply traditional products liability law which requires the plaintiff to prove that the defendant manufactured the product which allegedly caused the injury." *Lee*, 721 F.Supp. at 93. For the reasons more fully set forth by Judge Ramsey in *Lee*, the undersigned judge has

concluded that the concert of action theory is not recognized under Maryland law.[4]

Plaintiffs also argue that standing exists in this case under the theory of market share liability fashioned by the California Supreme Court in *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980), *cert. denied*, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980); *see also Hall v. E.I. duPont de Nemours & Co.*, 345 F.Supp. 353 (E.D.N.Y.1972). However, as Judge Ramsey stated in *Lee*, such a theory has never been adopted by a Maryland court and is not recognized under Maryland law. *Lee*, 721 F.Supp. at 93; *see also Neary v. Johns–Manville, et al.*, Civil No. H–78–790 (Oral opinion of March 13, 1981) (Harvey, J.) ("... Maryland law does not at this time, and in my opinion would not in the future, although this is a question for the Maryland court to decide, recognize the theory of the *Sindell* case").[5] This Court has accordingly concluded that plaintiffs cannot proceed in this case under their proposed theory of concert of action. In the absence of an allegation of specific wrongful conduct of a named defendant which caused injury to a named plaintiff, plaintiffs lack standing to bring this suit.

▆▆▆▆ Finally, dismissal is warranted because in this class action each plaintiff has not and cannot allege an injury arising from the conduct of each and every defendant. In *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684 (E.D.Pa.1973), the Court held that a plaintiff must establish personal standing to sue each defendant before attempting to satisfy the requirements of class certification under Rule 23. A representative plaintiff must have individual standing to assert claims against all members of a defendant class in order to represent the class. *See Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 75 (S.D.N.Y.1986). In this case, not only have plaintiffs failed to demonstrate a specific injury-in-fact arising from the conduct of any one particular defendant, but they have also failed to demonstrate that any plaintiff has been injured by the conduct of each and every defendant.

For all these reasons, defendants' motions to dismiss will be granted, without prejudice to the right of each plaintiff to seek relief in an appropriate state court. An appropriate Order will be entered by the Court.

---

4. Plaintiffs' reliance on *Haddock v. Stewart*, 232 Md. 139, 192 A.2d 105 (1963) is misplaced. In permitting a suit against two drivers in an illegal drag race to go forward, the Court of Appeals of Maryland hardly suggested that the concert of action theory could be relied upon in a products liability suit.

5. That ruling was made by the undersigned judge on March 13, 1981 in an asbestos case. Maryland law has not in the intervening years adopted the *Sindell* rationale.