**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 5 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CONNIE M. ESTES,

      Plaintiff - Appellee,

v.

WYOMING DEPARTMENT OF
TRANSPORTATION,

      Defendant - Appellant.

No. 00-8069

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 00-CV-39-B)**

---

Jay A. Jerde, Senior Assistant Wyoming Attorney General, (Hon. Gay
Woodhouse, Wyoming Attorney General, and John W. Renneisen, Deputy
Attorney General, with him on the brief), Office of the Wyoming Attorney
General, Cheyenne, Wyoming, for Defendant-Appellant.

Colette B.Davies, (L.B. Cozzens, with her on the brief), Cozzens, Warren &
Harris, P.L.L.P., Billings, Montana, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**LUCERO**, Circuit Judge.

---

**LUCERO**, Circuit Judge.

Connie Estes began her employment with the Wyoming Department of Transportation ("WDOT") as a driver's license examiner in January 1997. In April 1997, she injured her back at work, and in March 1998, she underwent lumbar decompressive surgery. On November 10, 1998, Estes's surgeon released her for work with three restrictions: lifting limited to twenty-five pounds; no repetitive bending at the waist, stooping, or crawling; and no sitting or standing without being able to move for more than one hour. At the request of WDOT, a physician reviewed Estes's medical records and concluded on November 16, 1998, that she was unable to perform her functions as a driver's license examiner because she could not lift fifty pounds. In December 1998, Estes was dismissed by WDOT.

Estes filed suit in state court alleging that WDOT violated Title I of the American with Disabilities Act ("ADA"), committed breach of contract, and violated Wyoming's workers' compensation law when it dismissed her. She sought lost pay and fringe benefits, compensatory damages, reinstatement, court costs, and attorney's fees. WDOT removed the case to federal court and stated in the Notice of Removal that it was not waiving any constitutional challenges to the district court's jurisdiction. Later WDOT filed a motion for judgment on the pleadings, arguing the district court lacked jurisdiction because WDOT is entitled to sovereign immunity and, alternatively, that Estes failed to exhaust state

administrative remedies for her breach-of-contract claim. Denying the motion in part and granting it in part, the district court held that Congress validly abrogated the States' sovereign immunity for violations of Title I of the ADA; that WDOT waived its sovereign immunity from the breach-of-contract claim when it removed the case to federal court; and that the state-law workers' compensation claim was barred by the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1-39-101 to -121. WDOT timely appealed, raising two main questions for our resolution: (1) whether Congress validly abrogated the States' sovereign immunity for violations of Title I of the ADA, and (2) whether WDOT waived its sovereign immunity when it removed the case to federal court.

We abated this case to await the Supreme Court's then-pending decision in Lapides v. Board of Regents, 122 S. Ct. 1640 (2002). That case has now been decided in a manner that definitively resolves one of the jurisdictional issues before us and provides substantial guidance on another. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part and reverse and remand in part.

**I**

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. As

interpreted, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662–63 (1974). Sovereign immunity is not absolute. Congress can, for example, abrogate a State's sovereign immunity "in the exercise of its power to enforce the Fourteenth Amendment," and a State may waive its immunity by consenting to suit. Coll. Savings Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 670 (1999). However, the requirements for abrogation and waiver are strict. Before Congress can abrogate a State's sovereign immunity pursuant to Article I, § 5 of the Fourteenth Amendment, Congress "must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct." Fla. Prepaid Postsecondary Ed. Expense Bd. v. Coll. Savings Bank, 527 U.S. 627, 639 (1999). Before we will conclude that a State has waived its sovereign immunity, there must be "an unequivocal waiver specifically applicable to federal-court jurisdiction." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985).

Denying WDOT's motion for partial judgment on the pleadings, the district court decided that Congress validly abrogated the States' sovereign immunity when it enacted the ADA and that WDOT waived its immunity on the state-law claims when it removed the case from state court to federal court. We review de novo the denial of a motion for judgment on the pleadings pursuant to Federal

Rule of Civil Procedure 12(c), applying the same standard as the district court—accepting all well-pleaded allegations in the complaint as true, and construing them in the light most favorable to the plaintiff. Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000).

## A

Applying Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001), decided after the district court entered its decision in this case, we reverse the district court's conclusion that Congress validly abrogated the States' sovereign immunity in Title I of the ADA. In Garrett, the Supreme Court held that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I of the ADA. Id. at 374 n.9. We proceed to consider whether WDOT's removal of the case to federal court constitutes a waiver of its sovereign immunity in this case.

## B

We initially consider WDOT's waiver argument regarding the state-law breach-of-contract claim. WDOT argues that a State's mere removal of a case from state court to federal court does not constitute a waiver of its sovereign immunity. WDOT contends that the State must additionally litigate the merits of the case in that forum.

Lapides forecloses this argument.  Lapides clearly holds that a State waives its sovereign immunity to suit in a federal court when it removes a case from state court.  Id. at 1646.  The Court stressed that its holding is limited "to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings."  Id. at 1643.  Because WDOT is a division of the State of Wyoming, and Wyoming Statutes Annotated § 1-39-104 waives Wyoming's sovereign immunity for contract-claim suits in its own courts, Lapides is dispositive.

Lapides holds that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum."  Id. at 1646.  Therefore it is irrelevant that appellant removed the case to federal court simply to challenge the district court's jurisdiction to hear the case.  See id. at 1645 ("A benign motive . . . cannot make the critical difference for which [the State] hopes.  Motives are difficult to evaluate, while jurisdictional rules should be clear.").

## C

In limiting its holding to state-law claims, Lapides does not squarely answer whether the mere act of removing federal-law claims waives a State's sovereign immunity in federal court.  However, based on the Supreme Court's

analysis in Lapides and our own circuit's precedent in this area, we conclude that WDOT has waived its sovereign immunity for the ADA claim.

Three of our cases address whether a State's removal of federal-law claims to federal court effects a waiver of sovereign immunity. See McLaughlin v. Bd. of Trustees, 215 F.3d 1168 (10th Cir. 2000); Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226 (10th Cir. 1999); Gallagher v. Continental Ins. Co., 502 F.2d 827 (10th Cir. 1974). We first addressed the general issue in Gallagher, which involved a suit challenging the pay of additional compensation for the Eisenhower Memorial Tunnel on Interstate 70, near Loveland Pass in Colorado. Citizens and taxpayers of the State of Colorado and the United States sued the State, project contractors, contractors' sureties, and various Colorado officials in state court. All defendants removed the case to federal court, based on federal question and diversity jurisdiction, and the district court dismissed. Ultimately dismissing this case for lack of standing, we initially addressed whether Colorado was entitled to sovereign immunity. We noted that "the state made a general appearance, joined in the removal petition and the resistance to plaintiffs' remand motion, [and] moved to dismiss for failure to state a claim . . . ." Gallagher, 502 F.2d at 830.

Twenty-five years later, we built upon this statement in Sutton. A mother of a student at the Utah State School for the Deaf and Blind sued both school and

principal under 42 U.S.C. § 1983 and various state laws in state court on behalf of her son, who had been sexually assaulted at the school by a fellow student. 173 F.3d at 1229–30. Defendants removed the case to federal court. The district court dismissed the § 1983 claim for failure to state a claim, declined to retain supplemental jurisdiction over the remaining state-law claims, and dismissed the state claims without prejudice. Id. at 1230. On appeal, defendants for the first time raised sovereign immunity as a defense. Id. at 1231. Sutton summarized the holding of Gallagher as follows: "[W]e held that the Eleventh Amendment defense was waived when a defendant State removed a case from state court to federal court." We concluded that the Supreme Court's post-Gallagher cases did not mandate a contrary result. Id. at 1234.

A State must express an "unequivocal intent to waive" sovereign immunity, id. (quoting Atascadero, 473 U.S. at 241), and such intent "seems clear when a state, facing suit in its own courts, purposefully seeks a federal forum," id. Sutton holds that whether the State Attorney General has specific authority to waive the State's sovereign immunity is irrelevant because the Attorney General's office "caused the removal of the case from state to federal court" and litigated the merits of the case in federal court. Id. at 1235. We concluded the State waived its sovereign immunity because it took actions that amounted to an "extraordinarily effective waiver." Id. at 1236 (quotation omitted).

- 8 -

In McLaughlin, the Board of Trustees of State Colleges of Colorado was sued by John P. McLaughlin in state court challenging his termination from a faculty appointment and his failure to receive a tenured position at Metropolitan State College of Denver, a constituent institution. 215 F.3d at 1169. McLaughlin sought relief pursuant to 42 U.S.C. § 1983 and state law governing breach of contract and promissory estoppel. Id. The Board removed the case to federal court and moved for dismissal on two bases: that the district court lacked subject matter jurisdiction on the federal claim because the Board was entitled to sovereign immunity and, in the alternative, that McLaughlin failed to state a claim. The district court concluded the Board did not waive its sovereign immunity by removing the case to federal court. We reversed. We held that reversal was compelled by Sutton, explaining that "when the invocation of federal court jurisdiction [is] brought about by defendants' own counsel, the case presents circumstances showing an extraordinarily effective waiver." Id. at 1170 (quotations omitted and brackets in original).

Advancing the major premise that in each of these three cases the States had proceeded to litigate the merits in federal court, WDOT specifically contends that a State must both remove and litigate the merits of a case in federal court before a waiver of sovereign immunity will be inferred. Because WDOT only "challeng[ed] the subject matter jurisdiction of the District Court with regard to

- 9 -

the ADA claim" and "did not take any steps after removal that could be construed as affirmatively invoking the jurisdiction of the District Court on the merits of the ADA claim," WDOT contends that it has not waived its sovereign immunity.[1] (Appellant's Br. at 6, 17.) We are not persuaded that the major premise of WDOT's argument is correct. Assuredly, the state defendants in McLaughlin, Sutton, and Gallagher did litigate the merits of the case after removing it to federal court. See McLaughlin, 215 F.3d at 1171–72; Sutton, 173 F.3d at 1235; Gallagher, 502 F.2d at 830. But nothing in these three cited cases limits their holdings to cases litigated on the merits following removal. Even if we were persuaded by WDOT's interpretation of the three cases that it utilizes to establish its major premise, Lapides now undermines the argument because it contains no such requirement.

The Supreme Court has consistently held that a State waives its sovereign immunity when it voluntarily appears in federal court. See Gunter v. Atlantic Coast Line R.R., 200 U.S. 273, 284 (1906); Clark v. Barnard, 108 U.S. 436, 447 (1883). Never has the Court enunciated a requirement of litigation on the merits

---

[1] When WDOT removed the case from state court to federal court, it unambiguously invoked the jurisdiction of the federal court. In the February 28, 2000, Notice of Removal, WDOT argued that the federal court had jurisdiction over the ADA claim because it arose under federal law, thus "satisfy[ing] the original jurisdiction requirement for removal under Section 1441(a)." (Appellant's App. at 13.)

as a condition of waiver.  <u>Lapides</u> recently built on the Court's prior precedent in declaring:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand. And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.

122 S. Ct. at 1643.  The jurisprudence in this area "stands for the unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts."  <u>Coll. Savings Bank</u>, 527 U.S. at 681 n.3; <u>see, e.g.</u>, <u>Gardner v. New Jersey</u>, 329 U.S. 565, 574 (1947) (holding that "[w]hen the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim").

We conclude that WDOT has waived its sovereign immunity relative to the ADA claim even if it attempted to remove the present case simply to federal court to challenge the jurisdiction of the federal forum.  Our holding today does not affect the ability of a State to raise sovereign immunity when it is involuntarily brought into federal court.  It is only when a State removes federal-law claims from state court to federal court that it "submits its rights for judicial determination," <u>Gunter</u>, 200 U.S. at 284, and unequivocally invokes the jurisdiction of the federal courts.

- 11 -

**D**

Because we conclude that WDOT waived its sovereign immunity by removing the case from state court to federal court, we need not address whether injunctive relief is available for Estes under Ex parte Young, 209 U.S. 123 (1908).

**II**

Having concluded that WDOT waived its sovereign immunity for the state breach-of-contract claim, we address WDOT's contention that the district court lacked jurisdiction over this claim because Estes failed to exhaust administrative remedies provided for in the State of Wyoming Personnel Rules ("Personnel Rules"). Those rules allow permanent state employees claiming to have been wrongly terminated to file an appeal with the Wyoming Department of Administration and Information ("WDAI"). If the employee does not file a petition for a "personnel appeal hearing" with the State Human Resources Administrator within twenty days of receipt of a notice of dismissal, there is no further right to appeal and the dismissal will stand. Personnel Rules of the Executive Branch of Wyoming State Government, ch. 12, § 7(a). Citing Glover v. State, 860 P.2d 1169 (Wyo. 1993), WDOT contends the Personnel Rules vest exclusive jurisdiction over personnel matters with WDAI until administrative remedies have been exhausted.

In Glover, a State employee was terminated from his job as a bindery technician for refusing to make outdoor deliveries during cold weather. Id. at 1170. Glover first filed suit in federal court; after that court granted a State's motion for summary judgment, he proceeded to file similar claims in state court. Id. at 1171. The state trial court granted the State's motion for summary judgment based on Glover's failure to exhaust administrative remedies. On appeal, the Wyoming Supreme Court affirmed, holding that the exhaustion doctrine applies when "an agency alone has been granted or found to possess exclusive jurisdiction over the case" and that the trial court did not abuse its discretion when it declined to exercise jurisdiction due to Glover's failure to exhaust his administrative remedies. Id. at 1173.

The district court in the present case rejected WDOT's exhaustion argument. Estes's breach-of-contract claim is based on unlawful discrimination. Under the Wyoming Fair Employment Practices Act, an individual alleging discrimination or unfair employment practices may file a complaint with the Wyoming Fair Employment Practices Commission ("Commission"). Therefore, Estes could file her complaint with either WDAI or the Commission. The district court concluded that WDAI "did not possess exclusive jurisdiction [over Estes's claims], and dismissal for failure to exhaust administrate remedies would be improper." (Appellant's App. at 82 (quotations omitted).)

On appeal, WDOT acknowledges that Estes could have filed her claim with one of the two Wyoming agencies, but contends that because Estes did not pursue her claim with the Commission, she must exhaust her administrative remedies with WDAI. We note that the basis of Estes's breach-of-contract claim is unlawful discrimination, that she filed a complaint with the Commission (Appellant's App. at 66), and that she obtained a right to sue letter[2] from the United States Equal Employment Opportunity Commission ("EEOC") (Appellant's App. at 7) before she filed suit in state court.

The exhaustion requirement advanced by WDOT depends upon WDAI having exclusive jurisdiction over a case. Both WDAI and the Commission, however, have jurisdiction over Estes's unlawful discrimination claim, which forms the basis of her breach-of-contract claim. We therefore conclude the district court did not abuse its discretion in determining that Estes is not required to exhaust her administrative remedies with WDAI under the Personnel Rules.

### III

The judgement of the district court is **REVERSED** in part and **AFFIRMED** in part. We **REMAND** for further proceedings consistent with this opinion.

---

[2] Estes's motion to supplement the record is DENIED. The deposition testimony of Debra Ornelas is not relevant to the disposition of the issues raised on appeal and an actual copy of the EEOC right to sue letter is not necessary because the existence of the letter is mentioned in Estes's complaint.

- 14 -