**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: November 5, 2014  Decided: September 16, 2015)

Docket No. 13-4198-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ELIZABETH BEAULIEU, *et al.*,
                    *Plaintiff-Appellants*,

v.

STATE OF VERMONT, *et al.*,
                    *Defendant-Appellees*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:     LEVAL, LYNCH, DRONEY, *Circuit Judges*.

        In an action against an agency and officials of the State of Vermont, alleging claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), which Defendants removed from Vermont state court to the United States District Court for the District of Vermont (Sessions, *J.*), Plaintiffs appeal from the district court's grant of Defendants' motion to dismiss on the basis of Vermont's sovereign immunity from private suit under the FLSA. We agree with the district court. While Defendants' removal to federal court waived their Eleventh Amendment immunity from suit in federal court, it did not waive Vermont's general sovereign immunity, and Vermont has not otherwise waived it. The judgment is AFFIRMED.

Thomas H. Somers and Adam P. Bergeron, Bergeron Paradis & Fitzpatrick, LLP, Burlington, Vermont, *for Plaintiff-Appellants*.

Jonathan T. Rose and Todd W. Daloz, Assistant Attorneys General *for* William H. Sorrell, Attorney General, State of Vermont, Montpelier, Vermont.

13-4198-cv
Beaulieu v. State of Vermont

Leval, *Circuit Judge*:

Plaintiffs, who are 704 current and former employees of the State of Vermont, appeal from the dismissal of the action by the United States District Court for the District of Vermont (Sessions, *J.*) by reason of Vermont's sovereign immunity. The complaint alleges violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and seeks declaratory and injunctive relief, damages, and liquidated damages for back pay. Defendants are the State of Vermont, the State of Vermont Agency of Administration, and the Vermont Secretary of Administration, sued in his official capacity ("Defendants"). Plaintiffs contend that, because their weekly pay is reduced for partial-day absences in excess of their accrued leave, they are not paid on a "salary basis" under the FLSA and are thus entitled to overtime pay at one and one-half times their regular rate.

Plaintiffs brought this action in state court. Defendants removed it to the federal district court. Defendants then filed an initial motion to dismiss for failure to state a claim under the FLSA. The district court denied the motion. After further motion practice and discovery, Defendants filed a second motion to dismiss, this time asserting state sovereign immunity from private FLSA suit. Plaintiffs responded that Defendants had waived their immunity by express statutory waiver, by removal, and by other litigation conduct, including assurances given to Plaintiffs that Vermont would not present a sovereign immunity defense. The district court rejected each of these arguments for waiver and granted Defendants' motion to dismiss. We conclude that, while Defendants may, by removing the action, have waived their Eleventh Amendment immunity from

2

suit in a federal forum, Defendants have not expressly waived Vermont's general sovereign immunity from private FLSA suit, and their litigation conduct does not constitute such a waiver.

We affirm the judgment.

## BACKGROUND

### I. The FLSA Claim

Plaintiffs are current and former members of various non-management, supervisory, judicial, and corrections bargaining units within the Vermont State Employees' Association ("VSEA"). Under their VSEA collective-bargaining agreements, Plaintiffs are guaranteed a "Basic Weekly Salary," based on a 40-hour work week at their relevant salary level, which is computed as an hourly rate. It is undisputed that Vermont "has and continues to offer Plaintiffs a minimum of forty (40) hours of work each week" and does not reduce employees' pay for absences occasioned by the State. Under the VSEA Agreements, Plaintiffs accrue personal leave for time worked, in addition to sick leave. When employees miss work for their own reasons, they must use either personal or sick leave in order to avoid deductions in their pay.

It is undisputed that as employees of a public agency, Plaintiffs are covered by the FLSA. It *is* disputed whether they are paid on a "salary basis" and therefore "exempt" employees under the FLSA. Exempt employees are not entitled to overtime. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100. The Secretary of Labor has promulgated a "General Rule" and "Exceptions" for determining whether an employee is paid on a salary basis and thus exempt from FLSA's overtime requirements. 29 C.F.R. § 541.602. Plaintiffs contend that, pursuant to this regulation, they are not paid on a salary basis because: 1) the minimum salary they receive varies with the quantity of work

they perform, as absences uncovered by personal or sick leave result in a loss of pay; 2) their pay is calculated at an hourly rate; and 3) the State's practice of docking their pay in partial-day increments for partial-day absences not covered by leave is impermissible with regard to salaried employees. Defendants respond that: 1) the salary basis test allows for deductions in pay stemming from absences occasioned by the employee, rather than the employer; 2) according to regulation and judicial precedent, computation and recording of pay at an hourly rate do not vitiate its salary nature; and 3) public employers may make partial-day deductions for employee absences not covered by accrued leave without affecting the salaried, exempt status of employees under 29 C.F.R. § 541.710.

## II. Proceedings Below

Plaintiffs brought this action in Vermont Superior Court on January 7, 2010, seeking relief under the FLSA. The complaint asserted that Vermont, by act of its legislature, Vt. Stat. Ann. tit. 21, § 384(b)(7), had expressly waived its sovereign immunity to private suit under the FLSA. Defendants removed the case to the federal district court on February 8, 2010, asserting that court's jurisdiction under 28 U.S.C. § 1331, because Plaintiffs' claim was based on federal law. In their initial Motion to Dismiss, Defendants did not raise a sovereign immunity defense, but argued instead that Plaintiffs had failed to state a claim under the FLSA. In their Opposition to the Motion to Dismiss, Plaintiffs repeated the assertion that the Vermont legislature had expressly waived sovereign immunity to private suits under the FLSA by statute. Defendants did not address the issue in argument on the motion. After the district court denied Defendants' first

Motion to Dismiss, Defendants filed an Answer, which did not assert a sovereign immunity defense.

Over a year later, at a conference discussing prospective summary judgment motions, Plaintiffs again raised the possibility of a sovereign immunity defense. Defendants responded that they were not asserting the defense and that it had been waived. Plaintiffs then sent Defendants a set of interrogatories, including "Does the State intend to rely upon the defense of sovereign immunity?", to which Defendants responded: "Defendants removed the claim to federal court. Accordingly, Defendants do not intend to assert 11th Amendment immunity. Defendants do not intend to assert they are otherwise immune from the FLSA in this action." J.A. 285.

Three months after filing this interrogatory response, and more than two years after the beginning of the lawsuit, Defendants amended their response, announcing that they now intended to present a sovereign immunity defense. Defendants specifically asserted immunity from private FLSA suit in both state and federal court, and moved to amend their Answer to that effect. On July 3, 2012, the District Court denied the motion to amend as to sovereign immunity and instead directed the parties to file dispositive motions on the issue after further discovery. On October 24, the court allowed further depositions on the sovereign immunity issue, and on November 26, 2012, Defendants finally filed their motion to dismiss on sovereign immunity grounds. Shortly thereafter, both parties moved for summary judgment on the merits of the FLSA claim, and Plaintiffs moved also for partial summary judgment on the sovereign immunity defense. On September 30, 2013, after hearing argument on the pending motions, the district court granted

Defendants' motion to dismiss the suit on sovereign immunity grounds. *Coniff v. Vermont*, No. 2:10-CV-32, 2013 WL 5429428 (D. Vt. Sept. 30, 2013).

**DISCUSSION**[1]

The concept of state sovereign immunity encompasses different species of immunity. The Eleventh Amendment, as interpreted by the Supreme Court, identifies a single species: immunity of a state's treasury from claims for damages brought by private entities in federal courts. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This immunity protects a state's dignity and fiscal integrity from federal court judgments, *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 240 (2d Cir. 2006), and acts as a limitation on the federal judiciary's Article III powers. *See Alden v. Maine*, 527 U.S. 706, 716-21 (1999); *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("The Eleventh Amendment effectively places suits by private parties against states outside the ambit of Article III of the Constitution."). States also enjoy a broader sovereign immunity, which applies against *all* private suits, whether in state or federal court. *See Alden*, 527 U.S. at 713, 722 (noting that states' "immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution" and that "the sovereign immunity of the States neither derives from, nor is limited

---

[1] \ Defendants removed this case to the district court pursuant to 28 U.S.C. §§ 1331 and 1441, on the basis of Plaintiffs' FLSA claim. The district court dismissed the case on sovereign immunity grounds and entered final judgment on September 30, 2013. Plaintiffs filed a timely Notice of Appeal on October 29, 2013. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. On appeal from a dismissal for lack of subject matter jurisdiction due to a defendant's sovereign immunity, this Court reviews factual findings for clear error and legal conclusions *de novo*. *Close v. New York*, 125 F.3d 31, 35 (2d Cir. 1997).

by, the terms of the Eleventh Amendment," since in enacting the Eleventh Amendment "Congress acted not to change but to restore the original constitutional design"). "The Eleventh Amendment . . . is but one particular exemplification of that immunity." *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 753 (2002). Accordingly, there are two types of "sovereign immunity" at issue here: (1) a particular species of sovereign immunity – Eleventh Amendment immunity from suit in federal court – and (2) the states' broader general sovereign immunity against all suits.

Neither type of immunity is absolute. States may elect to waive either type of immunity either in federal or state court. *Coll. Sav. Bank v. Fla. Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999); *Lapides v. Bd. of Regents*, 535 U.S. 613, 618-20 (2002); *Jacobs v. State Teachers' Ret. Sys. of Vt.*, 816 A.2d 517, 521 (Vt. 2002). Under limited circumstances, Congress may override state sovereign immunity by exercising its Fourteenth Amendment enforcement powers. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). However, Congress's mere creation of a private right of action does not prevent a state from asserting its immunity to suit seeking enforcement of such a statute that ostensibly imposes obligations on states. *See Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.,* 411 U.S. 279, 283-285 (1973) (recognizing that the FLSA was binding upon Missouri but nevertheless upholding the State's immunity to private suit to recover under that Act); *see also Alden*, 527 U.S. at 732 ("When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States.").

The Defendants do not claim Eleventh Amendment immunity. They sought (and were granted) dismissal of the action on the basis of Vermont's broader immunity from suit in either state or federal court. Plaintiffs do not contest that Vermont's sovereign immunity shields all three Defendants unless that immunity has been waived or forfeited. The only question we face is whether either the State of Vermont or the Defendants have voluntarily waived or forfeited the State's sovereign immunity to private FLSA suit. Plaintiffs argue that Vermont has done so by express statutory waiver, and that Defendants have done so by voluntary removal of the case from state to federal court, as well as their representations during the first two years of litigation that they would not assert a sovereign immunity defense. We address each argument in turn.

## I. Express Statutory Waiver

The question of whether a state has waived its immunity from private FLSA suits is answered, in the first instance, by reference to state law. *See Alden*, 527 U.S. at 757–758 (looking to Maine law to determine whether Maine had waived sovereign immunity against claims under the FLSA). Vermont courts have concluded that Vermont's state sovereign immunity can be waived only "expressly by statute." *Jacobs*, 816 A.2d at 521; *LaShay v. Dep't of Soc. & Rehab. Servs.*, 625 A.2d 224, 228-29 (Vt. 1993).

Plaintiffs argue that a statutory provision, Vt. Stat. Ann. tit. 21, § 384(b)(7), constitutes an express waiver of the state's immunity from private actions brought under the FLSA. The pertinent part of that provision reads as follows:

(b) . . . [A]n employer shall not pay an employee less than one and one-half times the regular wage rate for any work done by the employee in excess of 40 hours during a workweek. However, this subsection shall not apply to:

> . . . .
>
> (7) State employees who are covered by the Federal Fair Labor Standards Act.

Vt. Stat. Ann. tit. 21, § 384(b)(7). Plaintiffs contend that "the plain, ordinary meaning of the term 'covered by' [in clause (7)] is that state employees are afforded the protections and remedies under the FLSA." Plaintiffs' Br. at 15.

Plaintiff's argument misunderstands the difference between the applicability of a federal statute to a state enacting lawful obligations upon the state, and the state's amenability to a private entity's suit to enforce such an obligation. There is no doubt that the FLSA applies to Vermont and creates a legal obligation on Vermont to pay its employees in accordance with the statute's terms. Nonetheless, Vermont's sovereign immunity – unless waived or forfeited – bars suit by a private entity seeking to enforce the FLSA's terms. *See Emps. of Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. at 283-86 (recognizing that the FLSA was binding upon Missouri but nevertheless upholding the State's immunity to private suit to recover under that Act).

Vermont's statutory reference to the fact that some of its employees are covered by the FLSA implicitly acknowledges its legal obligations under federal law, but says nothing about how that obligation may be enforced against it. It does not constitute an implicit, much less an explicit waiver of its sovereign immunity from private suit. The fact that Vermont state employees are covered by the FLSA does not mean that those employees are entitled to sue Vermont under the FLSA's private right of action. To the contrary, Supreme Court precedent is unequivocal in distinguishing between a state's legal obligation to comply with a federal law and its immunity from private actions brought pursuant to that law. *Alden*, 527 U.S. at 755-59 (refusing to find a

waiver of sovereign immunity despite Maine's policy of compliance with the FLSA); *Emps. of Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. at 283-285 (recognizing that the FLSA was binding upon Missouri but nevertheless upholding the State's immunity to private suit to recover under that Act); *cf. Williams v. Okla. Dep't of Human Servs.*, 122 F. App'x 958, 959 (10th Cir. 2004) (holding that Oklahoma state law stating a policy of "comply[ing] fully with the provisions of the Federal Fair Labor Standards Act" did not constitute waiver of sovereign immunity). Mere state statutory recognition of Vermont's legal obligation to comply with the FLSA does not express an intent to waive immunity from suit.

Nor is there validity to the argument that, as Vermont is subject to the FLSA under the Supremacy Clause of the Constitution regardless of whether it acknowledges its obligations, the statutory acknowledgment should be construed as a waiver because it would serve no purpose unless as a waiver of immunity. The statute has a different clear purpose, which is to provide that Vermont's own statutory overtime pay requirement does not apply to "State employees who are covered by" the FLSA. Vt. Stat. Ann. tit. 21, § 384(b)(7). It clarifies that this latter category of employees, whose overtime entitlements are provided by the FLSA, are not also entitled to overtime under state law.

The language of § 384(b)(7) is easily distinguishable from the sort of express language utilized by the Vermont legislature and recognized by Vermont courts as a waiver of sovereign immunity, exposing the state to private suit. *See, e.g.*, Vt. Stat. Ann. tit. 12, § 5601(a) (stating that the State "shall be liable" for injuries caused by negligence of state employees); *LaShay*, 625 A.2d at 228 ("Sovereign immunity protects the state from suit unless immunity is expressly

waived by statute. . . . . The State of Vermont has waived its immunity to certain suits under 12 V.S.A. § 5601.").

## II. Waiver by Removal

Plaintiffs also argue that the Defendants waived Vermont's sovereign immunity by removing the suit to federal court. This argument misunderstands the difference between Eleventh Amendment immunity and the broader state sovereign immunity at issue here. As explained above, a state's Eleventh Amendment immunity has a different purpose and is far narrower than the state's general sovereign immunity. Eleventh Amendment immunity relates to the relationship between the states and the federal government. It deprives the federal courts of power to award money damages enforceable against a state's treasury. It has no bearing on whether a plaintiff may sue the state for the same relief in the state's own courts. Even when a state may be sued in its own courts for a money judgment, the Eleventh Amendment protects it from a liability imposed by a federal court. But it would be unfair to allow a state which is liable in its own courts to remove a suit from its own courts to federal court and thereby escape all liability on the ground that the federal court lacks power to impose liability on the state. For this reason, the Supreme Court held in *Lapides v. Board of Regents of the University System of Georgia* that by removing a case from state court to federal court, a state defendant waives the right to rely on its Eleventh Amendment immunity from the federal court's judgment. 535 U.S. at 619-620, 624.

On the other hand, neither logic nor precedent supports the proposition that a state waives its general state sovereign immunity by removing an action from state court to federal court. A

state's sovereign immunity from private suit is a common law doctrine historically recognized by both state and federal courts, though most clearly explicated in federal judicial precedents. *See Alden*, 527 U.S. at 715-716 (citing, *inter alia*, *Nevada v. Hall,* 440 U.S. 410 (1979) and *Hans v. Louisiana,* 134 U.S. 1, 16 (1890)). A state defendant sued in state court, when entitled to remove the suit to federal court, may well wish to do so in the belief that its entitlement to have the suit dismissed by reason of the state's sovereign immunity, an entitlement largely elaborated by federal courts, will be better protected by the federal courts then by courts of the state. *See, e.g.*, *Stewart v. North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005) ("North Carolina merely sought to have the sovereign immunity issue resolved by a federal court rather than a state court."). Furthermore, a state agency sued on a federal law claim, which contends that the state's sovereign immunity remains intact but wishes to have the federal law claim adjudicated in federal court in the event of a finding that the state's immunity has been waived or abrogated, should not be compelled to abandon its claim of immunity as the price of access to a federal court. *See, e.g.*, *Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 342 (1st Cir. 2011) ("[Plaintiffs] argue that a state waives sovereign immunity whenever it removes a case to a federal court. If that proposition were to prevail, a state with a colorable immunity defense to a federal claim brought against it in its own courts would face a Morton's Fork: remove the federal claim to federal court and waive immunity or litigate the federal claim in state court regardless of its federal nature. Either way, the state would be compelled to relinquish a right: either its right to assert immunity from suit or its 'right to a federal forum.'" (quoting *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 140 (2005))). Accordingly neither logic nor fairness supports the proposition that a state

defendant's removal of a suit to the federal court should be construed as a waiver of the state's general immunity from suit. And precedent does not support treating a state's removal as such a waiver.

Plaintiffs cite the Supreme Court's opinion in *Lapides v. Board of Regents* as authority for the proposition that by removing a suit to federal court, a state defendant waives the state's general sovereign immunity. This is a misreading of *Lapides*. It was undisputed in that case that the state had already waived its general immunity to suit prior to the litigation. *Lapides*, 535 U.S. at 617 (explaining that, with respect to the relevant claims, "the State has explicitly waived immunity from state-court proceedings"). Accordingly, the *Lapides* defendant's removal to federal court could not serve as a waiver of the state's general immunity, which had already been waived. The Supreme Court ruled, for the very good reasons discussed above, that the state's removal to federal court *did* constitute a waiver of its Eleventh Amendment immunity from suits for damages in the federal courts. The court explained that allowing a state which had waived its sovereign immunity to effectively recover immunity by removing the case to federal court and then claiming Eleventh Amendment immunity would give the state an "unfair tactical advantage[]." *Id.* at 621. The Court expressly declined to "address the scope of waiver by removal [that might occur] in a situation where the State's underlying sovereign immunity from suit has not [already] been waived or abrogated in state court." *Id.* at 617-18. *Lapides* therefore furnishes no support whatsoever for Plaintiffs' contention that Vermont's removal waived its general immunity from FLSA claims.

Nor do plaintiffs get support from *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459 (1945), the case that *Lapides* overruled. *Ford Motor Co.* similarly focused on whether removal waived Eleventh Amendment immunity. In that case, as in *Lapides*, the state had previously waived its general sovereign immunity and the question was whether it could effectively recover the previously waived immunity by removing the case to federal court and claiming the protection of the Eleventh Amendment. *See* 323 U.S. at 465-67. Following a line of reasoning that the court subsequently disavowed in *Lapides*, *Ford* ruled that, because the state's law did not authorize the state attorney general to waive sovereign immunity, the attorney general's removal to federal court likewise could not constitute a waiver of the state's Eleventh Amendment immunity. *See id.* at 467-69. *Lapides* rejected *Ford's* ruling on this point, crafting the doctrine of waiver of Eleventh Amendment immunity by removal precisely to prevent a state exposed to suit in its own courts by its own laws from fabricating immunity through flight to a federal forum. *Lapides*, 535 U.S. at 623 ("A rule of federal law that finds waiver through a state attorney general's invocation of federal-court jurisdiction avoids inconsistency and unfairness."). There is no suggestion in either opinion supporting Plaintiffs' claims here.

There has, however, been some confusion in the Circuit Courts as to the meaning of *Lapides*, and its impact on cases in which a state that has not previously waived its general immunity to a private action voluntarily removes the action to federal court, presumptively waiving its Eleventh Amendment immunity. Our court has not ruled on the question. Six Circuits that have expressly considered the question have concluded that a state defendant's voluntary removal of a private suit to federal court does not by itself waive the state's general immunity

14

from such a suit. *See Stroud v. McIntosh,* 722 F.3d 1294, 1302 (11th Cir. 2013) ("We do not understand *Lapides* to require the state to forfeit an affirmative defense to liability simply because it changes forums."); *Bergemann*, 665 F.3d at 342 ("Rhode Island's sovereign immunity defense is equally as robust in both the state and federal court. Consequently, there is nothing unfair about allowing the state to raise its immunity defense in the federal court after having removed the action. Simply put, removal did not change the level of the playing field."); *Lombardo v. Pa. Dep't of Pub. Welfare,* 540 F.3d 190, 198 (3d Cir. 2008) ("We hold that while voluntary removal waives a State's [Eleventh Amendment] immunity from suit in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability."); *Meyers ex rel. Benzing v. Texas,* 410 F.3d 236, 255 (5th Cir. 2005) ("[W]hen Texas removed this case to federal court it voluntarily invoked the jurisdiction of the federal courts and waived its [Eleventh Amendment] immunity from suit in federal court. Whether Texas has retained a separate immunity from liability is an issue that must be decided according to that state's law." (citation omitted)); *Stewart*, 393 F.3d at 490 ("North Carolina had not consented to suit in its own courts for the relevant claims . . . . Therefore, by removing the case to federal court and then invoking sovereign immunity, North Carolina did not seek to *regain* immunity that it had abandoned previously. Instead, North Carolina merely sought to have the sovereign immunity issue resolved by a federal court rather than a state court." (citations omitted)); *Watters v. Washington Metro. Transit Auth.*, 295 F. 3d 36, 39, 42 n.13 (D.C. Cir. 2002) (holding that an entity created by inter-state compact, which enjoyed immunity from suit to enforce attorney's liens in the compactors' own courts, did not waive that immunity by removal to federal court).

15

The foregoing cases, while emphasizing different points in justifying their arrival at a common result, concur in the altogether reasonable proposition that, where a state defendant has not waived its underlying state sovereign immunity, i.e., where it is arguably protected from private suit in its own courts as well as in federal fora, the state may avail itself of removal to the federal court without sacrificing this immunity, notwithstanding that by removing it gives up entitlement to Eleventh Amendment immunity from suit in a federal forum.

Plaintiffs contend that their position is nonetheless supported by decisions of the Seventh, Ninth, and Tenth Circuits, and ask us to follow them. *See Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.,* 653 F.3d 448 (7th Cir. 2011); *Embury v. King*, 361 F.3d 562 (9th Cir. 2004); *Estes v. Wyo. Dep't of Transp.,* 302 F.3d 1200 (10th Cir. 2002). Plaintiffs argue that these cases hold that a state's voluntary participation in federal court litigation constitutes a waiver of the state's general sovereign immunity. This is a misreading of the law of the relevant circuits, all of which adhere to the generally accepted proposition that a state defendant's removal of an action to federal court waives the state's objection, based on the Eleventh Amendment, to the exercise of federal jurisdiction, but do not subscribe to the proposition advocated by Plaintiffs that by such removal the defendants also waive the state's general sovereign immunity.

In the Seventh Circuit case, *Board of Regents of the University of Wisconsin System,* 653 F.3d at 450-51, a Wisconsin state university instituted an action in federal district court alleging that the defendant infringed its trademark; the defendant counterclaimed alleging that the state university was the infringer. The state university asserted its Eleventh Amendment immunity to

bar the counterclaims in the federal court. The Seventh Circuit characterized the question as whether the defendant's "counterclaims against Wisconsin [are] barred by the sovereign immunity doctrine that *the Supreme Court has found reflected in the Eleventh Amendment* to the U.S. Constitution?" *Id.* at 457 (emphasis added). In a lengthy, erudite opinion, Chief Judge Wood answered the question in the negative, finding no determinative difference between a state defendant's removal of an action from state court to federal court, which under *Lapides* waives Eleventh Amendment immunity, and Wisconsin's voluntary institution of an action in federal court. While the opinion at times speaks in abbreviated terms of what was waived as the state's "sovereign immunity," it is unmistakably clear that the sovereign immunity in question was the limited Eleventh Amendment immunity that applies only to the states' amenability to suit in federal court, and not to the state's general sovereign immunity.[2] The court never addressed whether, at the time of the federal court litigation, the state retained or had waived its sovereign immunity to suit in its own state courts.

The Seventh Circuit made this point unmistakably clear two terms later in *Hester v. Indiana State Department of Health*, 726 F.3d 942 (7th Cir. 2013), in which Judge Wood, writing once again, characterized the question whether "a state waive[s] the immunity it would have in state court by removing a suit to federal court" as "a question that we have not yet had occasion to

---

[2] In Part IV of the opinion the court undertook a broad discussion of whether its holding was "in tension with the Supreme Court's sovereign immunity cases," concluding that it was not. 653 F.3d at 471. In this part of the opinion, the court refers more broadly to cases involving the general sovereign immunity of states. Nonetheless, the finding of waiver in the case applies only to Eleventh Amendment immunity.

answer." *Id.* at 949. The *Hester* opinion goes on to explain that the earlier case "d[id] not answer the question . . . because there we said nothing about whether the state would have been immune . . . in state court." *Id.* at 950. Accordingly, Seventh Circuit precedent offers no support to Plaintiffs' claim that removal from state to federal court by a state that otherwise retains its sovereign immunity in its own courts constitutes a waiver of that immunity.

Plaintiffs similarly misread the Ninth Circuit's decision in *Embury*, 361 F.3d 562. *Embury* likewise dealt with the question whether the state defendant, by removing the litigation to federal district court, had waived its Eleventh Amendment immunity from the adjudication of the federal court. The Ninth Circuit answered the question in the affirmative, *id.* at 566 ("Removal waives Eleventh Amendment immunity."), but the court in no way suggested that a state defendant's removal waives its general sovereign immunity, nor did the court even consider the question.[3]

The Tenth Circuit ruling upon which plaintiffs rely, *Estes v. Wyoming Department of Transportation*, 302 F.3d 1200 (10th Cir. 2002), is ambiguous as to whether it supports the plaintiffs' position, or whether it merely subscribes to the now well-established proposition that a state defendant, by invoking federal jurisdiction through removal to the federal court, waives its Eleventh Amendment immunity from federal jurisdiction. On the one hand, it is true that the *Estes* court repeatedly referred broadly to the state's "sovereign immunity" as having been

---

[3] While the court never addressed the question whether the state defendant retained or had waived its general state immunity, it appears that the immunity had already been waived: the district court, in denying the state defendant's motion based on Eleventh Amendment immunity, observed that, if the case were remanded to state court by reason of Eleventh Amendment immunity, much of the "considerable briefing on both the State and federal claims" submitted by the parties to the federal court "would be repeated in state court." *Id*. at 563.

18

waived by removal, without specifying whether it meant the state's general sovereign immunity, or the state's limited Eleventh Amendment sovereign immunity. On the other hand, the *Estes* court found precedential support for what it characterized as "the unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts" in the Supreme Court's assertion in *Lapides*, that "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction . . . and (2) to claim Eleventh Amendment immunity." *Estes*, 302 F.3d at 1206 (quoting *Coll. Sav. Bank*, 527 U.S. at 681 n.3, and *Lapides*, 535 U.S. at 619). The court's reliance in justification of its finding of waiver on the Supreme Court's language from *Lapides*, which explained why the state defendant's removal to federal court justified the conclusion that it had waived its Eleventh Amendment immunity to federal jurisdiction, rather suggests that the Tenth Circuit was speaking of this more limited waiver, rather than of waiver of the state's general sovereign immunity.

Nonetheless, even assuming that the ambiguous discussion by the Tenth Circuit in *Estes* can be interpreted, on its face, as supporting our Plaintiffs' position that a state defendant's removal to federal court constitutes a waiver of the state's general sovereign immunity, the Tenth Circuit has recently disavowed that reading of *Estes.* In *Trant v. Oklahoma*, 754 F.3d 1158 (10th Cir. 2014), the Tenth Circuit cited with approval Circuit decisions discussed above that analyzed state sovereign immunity as consisting of both immunity from suit in a federal forum, which is waived by voluntary removal to federal court, and immunity from liability in both state and federal fora, which is not so waived. *Id.* at 1172-73. *Trant* ruled that "a state may waive its immunity from suit in a federal forum [under the Eleventh Amendment] while retaining its immunity from

liability [pursuant to the state's general sovereign immunity]." *Id.* at 1173. The *Trant* court further explained that its view was not inconsistent with *Estes. Id.* ("In *Estes*, we concluded that Wyoming's removal of a federal law claim acted as an unequivocal waiver of immunity from suit *in federal court*." (emphasis added)). Thus, even if we read the *Estes* opinion as supportive of Plaintiffs' position, the Tenth Circuit revoked that support by its own interpretation of its *Estes* holding in *Trant*.

In any event, it makes no difference what the Tenth Circuit meant in *Estes*. Even assuming that the *Estes* court meant that removal to federal court by a state defendant which has preserved its general sovereign immunity constitutes a waiver of that general sovereign immunity (as well as a waiver of the state's Eleventh Amendment immunity to federal jurisdiction), we would reject that view and instead accept what we consider the more persuasive reasoning of the several circuits that have concluded that, while a state defendant's removal waives the state's Eleventh Amendment immunity, it does not waive the state's general sovereign immunity. We reject Plaintiffs' argument because we find it contrary both to reason and to virtually unanimous circuit court authority.

We conclude that Vermont's removal of this case to federal court, while barring Defendants from objecting under the Eleventh Amendment to the federal court's power to impose judgment payable out of Vermont's treasury, did not constitute a waiver of Vermont's general sovereign immunity to private actions under the FLSA, which applies in both state and federal courts.

### III. Waiver by Other Litigation Conduct

20

Plaintiffs' final argument is that Defendants' express renunciation in the early phases of this litigation of a defense invoking the state's sovereign immunity prejudiced the Plaintiffs and thus constituted a waiver, precluding Defendants from later changing their minds about asserting sovereign immunity.

In response, Defendants argue that what constitutes a waiver of a state's general immunity is determined by the state's law, *see Alden*, 527 U.S. at 757-58, and that Vermont's courts have recognized only express statutory waivers of state sovereign immunity. *Jacobs*, 816 A.2d at 521; *LaShay*, 625 A.2d at 228. Defendants argue further, on the basis of cases discussing Eleventh Amendment immunity, that a state is free to raise its immunity "at any time during the course of the proceedings." *McGinty v. New York*, 251 F.3d 84, 94 (2d Cir. 2001); *see also Calderon v. Ashmus,* 523 U.S. 740, 745 n.2 (1998) (noting that the Eleventh Amendment is jurisdictional in that it limits a federal court's judicial power, and may be invoked at any stage of the proceedings); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99 n.8 (1984) (noting that the Eleventh Amendment "deprives federal courts of any jurisdiction to entertain . . . claims [against the State by private parties], and thus may be raised at any point in a proceeding"); *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 449 (2d Cir. 1999), *abrogated on other grounds by* 548 U.S. 53 (2006) (holding that an Eleventh Amendment immunity defense need not be raised in trial court to be considered on the merits); *Leonhard v. United States,* 633 F.2d 599, 618 n.27 (2d Cir. 1980) (holding that sovereign immunity need not be expressly raised in the district court or on appeal since it is a jurisdictional defect and may be raised at any time).

Plaintiffs counter that this is inconsistent with the Supreme Court's reliance in *Lapides* on the prejudicial unfairness of the state defendant's conduct to justify the conclusion that the defendant's removal constituted a waiver of Eleventh Amendment immunity. If the unfairness of the state's conduct and the prejudice it inflicts on its litigating adversary justify imposing a waiver of Eleventh Amendment immunity on the state defendant, the argument goes, it follows that the tardiness of a state defendant's invocation of its general sovereign immunity can also deprive the defendant of that immunity, notwithstanding state law that precludes waiver otherwise than by express statutory provision.

We need not resolve this controversy because, even assuming that prejudicial conduct by a state defendant can override state law limiting the manner in which the state's general sovereign immunity may be waived or abrogated, we find no such prejudicial conduct here. It is true that Defendants changed their strategy and that earlier invocation of Vermont's immunity might have resulted in earlier dismissal, sparing Plaintiffs some burden and expense. But there is no record of duplicitous conduct by Defendants or of serious unfairness to Plaintiffs resulting from the tardy invocation of immunity. The court below ordered further discovery on the sovereign immunity question, and the parties had months to brief it. Accordingly, we reject Plaintiffs' final argument that Defendants waived Vermont's general sovereign immunity by their litigation conduct.

We conclude that the District Court correctly dismissed the action on the basis of Vermont's general sovereign immunity, which Vermont had not waived. Accordingly, we need not consider the District Court's alternative holding on the merits.

## CONCLUSION

13-4198-cv
Beaulieu v. State of Vermont

The judgment of the District Court dismissing the action by reason of the general sovereign immunity of the state Defendants is hereby AFFIRMED.