LUCERO, Circuit Judge,
concurring.
I join the majority as to part II.B. I write separately to express my disagree *1111 ment with my colleagues’ application of federal common law preemption.
The majority primarily rests its analysis on Boyle v. United Technologies Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Under Boyle, federal law preempts state law if: (1) the area of law concerns uniquely federal interests; and (2) “a significant conflict exists between an identifiable federal policy or interest and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation.” Id. at 504-505, 507, 108 S.Ct. 2510 (citations omitted). Because I agree that FEHB contract terms present uniquely federal interests, the relevant question concerns Boyle’s second prong, the “significant conflict” requirement.[1]
A significant conflict with a federal interest exists if a claim is based on “the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government.” Id. at 511, 108 S.Ct. 2510 (quotation omitted). This rule stems from a provision of the Federal Tort Claims Act preserving government immunity against claims implicating agency discretion. Id. (citing 28 U.S.C. § 2680(a)). The purpose of that provision was to “prevent judicial ‘second-guessing’ of legislative and administrative decisions ... through the medium of an action in tort.” United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (emphasis added).
Extending the rule to a contract claim unmoors it from its purpose. Declining to extend the rule to actions in contracts is consistent with Boyle, where the court essentially granted § 2680(a) tort immunity to government contractors. See Boyle, 487 U.S. at 530, 108 S.Ct. 2510 (Brennan, J., dissenting) (stating that the decision is “premised on the proposition that any tort liability indirectly absorbed by the Government so burdens governmental functions as to compel us to act when Congress has not” (emphasis added)). Because the test Boyle enunciated is limited to actions .in tort, I would not apply it to the contract claim in this case.
Moreover, even if we were to apply the Boyle test to a contract claim, the majority does not properly engage the test’s second prong. The majority opinion does not define “significant conflict”; instead it spends several pages fortifying its conclusions that the federal interest in this case — the government’s desire for system-wide uniformity and cost control — is significant, and that the conflict with state law is “stark.” (Majority Op. 1099.) But Boyle rejected the proposition that a “stark” conflict with state law is sufficient to support preemption. Boyle, 487 U.S. at 509, 108 S.Ct. 2510 (even if state law is “precisely contrary to the duty imposed by the Government contract ..., it would be unreasonable to say that there is always a significant conflict between the state law and a federal policy or interest”). The majority ignores this aspect of Boyle and instead reads the case as affirming that “a state regulation that directly conflicts with federal interests must be displaced.” (Majority Op. 1103.)
I cannot agree. A “significant conflict” must arise from an act based on federal agency discretion. Boyle, 487 U.S. at 511, 108 S.Ct. 2510. Courts have struggled to *1112 enunciate the boundaries of this discretion. See S.A. Empresa, 467 U.S. at 813, 104 S.Ct. 2755 (“[I]t is ... impossible ... to define with precision every contour of the discretionary function exception”). But it must have a limit, lest it swallow the entire Federal Tort Claims Act. In Boyle, the Court concluded that a government decision was discretionary because it involved “not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness.” 487 U.S. at 511, 108 S.Ct. 2510. In the present case, the government decision is not as complex. Whether to include subrogation clauses in FEHB contracts implicates uniformity and cost-savings concerns, but does not implicate technical or military considerations, engineering analyses, tradeoffs between greater safety and greater combat effectiveness, or anything comparable. Instead, it simply involves a cost-benefit analysis weighing the value of additional funds in the federal coffer against that of an increase in the ability of federal employees to recover healthcare costs. This decision may involve some discretion — just as nearly every government decision does — but the balancing act falls well short of the level of discretion exercised in Boyle.
To understand the minimal importance of any discretion exercised in this case, it is instructive to consider the impact of subrogation (recovery from a third party) and reimbursement (recovery directly from the. insured) on the asserted goals of uniformity and cost. The federal government’s interest in, uniformity is undermined if FEHB contracts do not require insurers to, pursue reimbursement or to recover under subrogation. But the contract at issue grants the insurer a significant role in pursuing both remedies. It provides that the insurer must make a “reasonable effort to seek recovery of amounts to which it is entitled to recover [through subrogation] in cases which are brought to its attention.” But, the insurer “shall not be required to recover any amounts from any [third party]” under subrogation. And if, as in this case, the insurer seeks reimbursement directly from the insured federal employee, the contract permits — but does not require — the insurer to seek recovery, contrary to the majority’s reading.[2] Thus, the insurer retains significant discretion in determining when to forego subrogation, and possesses full discretion in deciding if, when, and how to pursue reimbursement. The FEHB regime does not provide employees with uniform results because insurers can decide if they will recover, thereby allowing some federal employees to keep third-party recoveries while forcing others to pay them back. Federal employees thus pay higher premiums to support double recoveries for some policyholders subject to insurers’ whims, just as they do when some states exempt their own citizens from subrogation provisions through the democratic process.
The amount of cost-savings afforded by subrogation and reimbursement likewise suggests that the government interest is not significant. Across all states (most of which allow subrogation clauses), total sub-rogation recoveries amount to approxi *1113 mately 0.3% of the premiums paid into FEHB. Moreover, as explained above, the government leaves the decision of when to pursue cost-savings to the insurers. If the government interests were truly significant, one would expect it to obligate insurers to pursue reimbursement and to recover through subrogation.
To conclude that the government interests in the case at bar deserve much weight, the majority analogizes FEHB insurers to the military contractors in Boyle, and observes that it makes little sense to insulate the government against liability where it produces equipment directly but not where it contracts for production. (Majority Op. 1100-01.) This analogy merely raises the question: would agency discretion shield the government from financial liability if the government issued insurance directly, and not through priyate insurers? Not under § 2680(a) because the claim does not sound in tort. And even if it did, the impact of allowing subro-gation terms in FEHB contracts does not rise to the level of import of the decisions at issue in Boyle.
The majority also errs in its attempt to distinguish O’Melveny & Myers v. FDIC, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). In O’Melveny the Court concluded that the government’s general desire to avoid foregoing any money that might accrue to a federal fund was insufficient to support preemption without some limiting principle. Id. at 88, 114 S.Ct. 2048. The majority states that FEHB reimbursement provisions are “limited to recovering funds to prevent the boon of double recoveries for some enrollees.” (Majority Op. 1102.) But, if this is the limiting principle, it has no teeth. The contract terms are not limited to those cases involving double-recovery. To the contrary, the official statement of benefits expressly provides that the insurer may recover “even if [the insured] is not ‘made whole’ for all of [her] damages in the recoveries that [she] receive[s].” Helfrieh alleges that the recovery from BCBS and from the offending driver’s insurance together left $30,000 of her medical bills unaddressed. Accepting this well-pled allegation as true and construing it in the light most favorable to the plaintiff, Estes v. Wyoming Dep’t of Transp., 302 F.3d 1200, 1203 (10th Cir.2002), Helfrieh did not receive a double-recovery. She did not even cover her costs. The reimbursement provisions are over-inclusive, as they allow more than just double recoveries, and under-inclusive, because insurers may decide not to collect even if the insured did receive a double-recovery. To the extent that preventing double-recovery is a limiting principle, it has no application in this case.
The majority’s reasoning would exempt federal contracts from the contours of state law anytime the government finds that law economically inconvenient. We should not grant such broad authority to federal agencies. Instead, we should limit our preemption analysis to the relevant statute and the agency’s implementing regulations. For these reasons, I do not join the majority’s federal common law discussion.

. The second prong analysis is limited to the “significant conflict” requirement because there is no federal legislation concerning FEHB subrogation terms, aside from FEH-BA’s general preemption provision to which the federal common law analysis is inapplicable given our holding that the statute expressly preempts state anti-subrogation laws.

. To conclude that the insurer is required to use reasonable efforts to seek reimbursement, the majority first removes the reference to subrogation in the contract term that states "[t]he obligation of the Carrier to recover amounts through subrogation is limited to making a reasonable effort to seek recovery....” (Majority Op. 1093.) The majority then holds that this language does not apply to subrogation, and instead applies to an entirely separate clause governing reimbursement. I cannot agree with this reading.